DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Paulette Lilly Streza, appeals from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, which ordered various support payments and divided the parties' assets. This Court affirms in part and reverses in part.
 I. {¶ 2} Appellant and Appellee, Nicholas Streza, were married on September 21, 1984. Two children were born during the marriage, A.S., born July 8, 1986, and N.S., born September 16, 1987. On January 27, 2003, Appellant filed a complaint for divorce. The trial court granted the parties a divorce on March 2, 2004. Since that time, numerous post-decree motions and hearings have been held. These hearings have involved contempt proceedings, show cause orders, qualified domestic relations orders ("QDRO"), and challenges to the divorce decree itself.
 {¶ 3} Following the last of these motions and hearings, the trial court issued a final QDRO, making its divorce decree a final appealable order. Appellant timely appealed from the trial court's judgment, asserting two assignments of error for review. For ease of analysis, Appellant's assignments of error have been rearranged.
 II. ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN CALCULATING THE CHILD SUPPORT OBLIGATION OF THE APPELLEE."
 {¶ 4} In her second assignment of error, Appellant contends that the trial court erred in calculating Appellee's income for the purposes of child support.[1] Specifically, Appellant asserts that the trial court erred when it refused to include portions of Appellee's non-taxable income in the calculation of his gross income. This Court agrees.
 {¶ 5} This Court will not disturb the trial court's determination regarding child support absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. Abuse of discretion connotes more than simply an error in judgment; the court must act in an unreasonable, arbitrary, or unconscionable manner. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 6} R.C. 3119.01(C)(7) defines gross incomes as follows:
"[T]he total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable,
and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; * * * and potential cash flow from any source." (Emphasis added.)
Further, while the Code permits deductions for ordinary and necessary business expenses, those expenses may only be deducted from self-generated income. See Thompson v. Thompson, 11th Dist. No. 2002-T-0108, 2003-Ohio-3504, at ¶ 14-18.
 {¶ 7} Appellee was employed as a flight attendant and received a salary from the airline. As additional compensation for his employment, Appellee received a per diem payment of $1.75 per hour. It is undisputed that for the relevant time period Appellee received nearly $7,000 as a result of these per diem payments. Appellee has never asserted that he was self-employed, nor has he ever asserted any rationale which supports deducting his ordinary and necessary business expenses from his income. Under the plain language of the statute, whether or not Appellee's per diem wages were taxable is irrelevant to the determination of whether they are included in his gross income. Accordingly, the trial court abused its discretion in refusing to include the per diem monies that Appellee received from his employer in the calculation of his gross income.
Out-of-Pocket Health Care Expenses and Local Income TaxLiabilities
 {¶ 8} Appellant additionally argues that the trial court erred when it refused to correct errors contained in the child support worksheet. Specifically, Appellant asserts that the undisputed evidence establishes that the improper numbers were used for Appellee's marginal out-of-pocket health care expenses for the parties' children and for her local income tax liability. In response, Appellee asserts that the trial court was projecting the parties' liabilities for 2005, so the numbers provided by Appellant for 2004 were not binding.
 {¶ 9} This Court finds no support in the record for the assertions made by Appellee. At no point in time did the trial court discuss projecting the parties' liabilities. Further, assuming that these figures were projected, there is no evidence in the record to support such a projection. As such, the trial court was left with the undisputed evidence provided by Appellant that Appellee's out-of-pockets expenses totaled $327.00 and that Appellant's local income tax liability was $2,514.54. We find that by deviating from those amounts, without explanation or supporting evidence, the trial court abused its discretion.
Commencement Date of Child Support Modification
 {¶ 10} Appellant asserts that the trial court erred when it refused to commence Appellee's amended support obligation on the date that the parties' eldest son became emancipated, July 8, 2004. In his brief, "Appellee admits that he stipulated for the commencement date of the amended support obligation to be July 8, 2004." In addition, the trial court had the authority to modify support retroactively to the date requested by the parties. SeeSprankle v. Sprankle (Mar. 25, 1998), 9th Dist. No. 2678-M, at *2-3. As the emancipation of the parties' eldest child provided a clear date on which Appellee's obligation changed, we find that the trial court abused its discretion in refusing to modify the obligation commencing on July 8, 2004.
Tax Dependency Exemption
 {¶ 11} Appellant asserts that the trial court erred in granting the parties' each one of the children's tax dependency exemptions. We agree.
 {¶ 12} R.C. 3119.82 provides as follows:
"Whenever a court issues, or whenever it modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes as set forth in section 151 of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C. 1, as amended. * * * If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposesonly if the court determines that this furthers the bestinterest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." (Emphasis added.)
We begin by noting that the plain language of the statute does not require that the trial court state its reasons on the record for awarding the exemption. In support of the judgment, Appellee asserts that "[a]lthough not enunciated in its decision, it is clear that the Court did take into consideration the tax consequences to each of the parties * * * and the other factors set forth in [R.C.] 3119.82." Our review of the record, however, does not support such a conclusion.
 {¶ 13} While R.C. 3119.82 became effective on March 22, 2001, the case law issued prior to its enactment remains viable to the extent it discussed factors that were codified in R.C. 3119.82
and does not conflict with other provisions of the new legislation. The Ohio Supreme Court has noted that a net tax savings will result "through allocation to the noncustodial parent only if the noncustodial parent's taxable income falls into a higher tax bracket than the tax bracket of the custodial parent." Singer v. Dickinson (1992), 63 Ohio St.3d 408, 415. In the instant matter, it is undisputed that Appellant, the custodial parent, earns a substantially higher income than Appellee. Further, there is no evidence in the record, in any form, that supports the trial court's decision to allocate one exemption to each party. As the record reflects that the trial court failed to consider the factors under R.C. 3119.82, we find that it abused its discretion in simply dividing the two exemptions and allocating one exemption to each party. Accordingly, to the extent noted herein, Appellant's second assignment of error is sustained.
 ASSIGNMENT OF ERROR I
"THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING SPOUSAL SUPPORT TO APPELLEE."
 {¶ 14} In her first assignment of error, Appellant argues that the trial court erred in calculating her spousal support obligation. This Court agrees.
 {¶ 15} An award of spousal support is within the broad discretion of the trial court. Blakemore, 5 Ohio St.3d at 218. This court will not reverse the trial court's decision absent an abuse of discretion. Id. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Id. at 219.
 {¶ 16} R.C. 3105.18(C)(1) requires the trial court to consider fourteen factors in determining whether to award spousal support and the appropriate amount to award. Those factors include:
"(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
"(b) The relative earning abilities of the parties;
"(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
"(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
"(l) The tax consequences, for each party, of an award of spousal support;
"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
"(n) Any other factor that the court expressly finds to be relevant and equitable."
While Appellant urges that many of the factors under R.C.3105.18(C)(1) support her argument that the trial court erred in awarding spousal support, she first contends that the trial court erred in finding that Appellee was not voluntarily underemployed and imputing income to him.
 {¶ 17} R.C. 3119.01(C)(5) defines "income" as either of the following:
"(a) For a parent who is employed to full capacity, the gross income of the parent;
"(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent."
"Further, the question whether a parent is voluntarily (i.e.,
intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." (Emphasis sic.) Rock v. Cabral (1993),67 Ohio St.3d 108, 112.
 {¶ 18} In support of her claims in the trial court, Appellant elicited testimony that Appellee has a law degree and a law license. Appellant asserts that Appellee could perform legal services in the local community in addition to his current position and earn additional income. It is undisputed that Appellee is currently employed as flight attendant and earns between $50,000 and $60,000 per year. Appellant urges, however, that Appellee's schedule permits him to perform a second job, namely provide legal services. This Court can find no support for Appellant's assertion that Appellee should be required to secure a second occupation to increase his income. During the course of the marriage, Appellee never practiced law. We find no authority for the proposition that upon divorce he should be forced into a career he never embraced during the marriage. Accordingly, this Court cannot say that the trial court abused its discretion in finding that Appellee was not voluntarily underemployed.
 {¶ 19} In addition, Appellant asserts that due to the fact that Appellee is capable of self-support that an award is unreasonable. This Court, however, has held that "need is not determinative of whether a trial court should award spousal support." Taylor v. Taylor (Dec. 23, 1998), 9th Dist. No. 18424, at *5. Further, there is no indication in the record that the trial court failed to consider the factors contained in R.C.3105.18(C)(1).
 {¶ 20} The parties were married for nearly twenty years (R.C.3105.18(C)(1)(e)). Appellant's income is nearly double that of Appellee (R.C. 3105.18(C)(1)(a)/(b)). The trial court's award did not seek to equalize the parties' income, nor did it have that effect. Further, the trial court heard testimony on the parties' standard of living during the marriage (R.C. 3105.18(C)(1)(g)), received numerous reports on the value of the parties' retirement benefits (R.C. 3105.18(C)(1)(d)), evaluated the parties' assets and liabilities (R.C. 3105.18(C)(1)(i)), and listened to testimony regarding the contributions of each party to the costs of the other's education (R.C. 3105.18(C)(1)(j)). In Taylor,
this Court permitted an award of support to an individual earning an income substantially similar to Appellee's income. Taylor,
supra, at *1. Accordingly, we cannot say that the trial court abused its discretion in ordering Appellant to pay spousal support.
 {¶ 21} As noted above, however, the trial court erred in computing Appellee's gross income. As this error effects the computation of Appellant's spousal support obligation, that obligation must be computed using the appropriate figures. Accordingly, to that extent, Appellant's first assignment of error is sustained.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN AWARDING TO APPELLEE A PORTION OF THE UNITED AIRLINES DEFINED CONTRIBUTION PLAN AS HIS SEPARATE PROPERTY[.]"
 {¶ 22} In her third assignment of error, Appellant contends that the trial court erred in finding that a portion of Appellee's contribution plan was separate property. This Court agrees.
 {¶ 23} The distribution of assets in divorce proceedings is governed by R.C. 3105.171. Pursuant to the statute, the trial court is required to determine whether property is marital or separate property. R.C. 3105.171(B). Separate property includes, but is not limited to, real or personal property which was acquired by one spouse prior to the date of marriage. R.C.3105.171(A)(6)(a)(ii).
 {¶ 24} This Court must affirm the trial court's determination as to the nature of the property as either marital or separate if such determination is supported by competent, credible evidence.Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159; see, also,Boreman v. Boreman, 9th Dist. No. 01CA0034, 2002-Ohio-2320, at ¶ 7. This standard of review "is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent a reversal." Barkley, 119 Ohio App.3d at 159. As the trial court is best able to observe the demeanor, gestures, and voice inflections of the witnesses, and to use those observations to weigh the credibility of the proffered testimony, this Court is guided by a presumption that the findings of the trial court are correct. Id., citing In re Jane Doe 1 (1991),57 Ohio St.3d 135.
 {¶ 25} Upon review, this Court finds that Appellee provided no documentation to support his claim of separate property. Indeed, Appellee's expert testified as follows:
Q. "Sir, is it your opinion, as an expert pension evaluator, that that $21,039 was [Appellee's] separate property as a result contributions * * * made prior to the marriage?
A. "It's our opinion this is a reasonable way, in lieu of documentation, to try to approximate. * * * As I said it is not an exact tracing[.]" (Emphasis added.)
On cross-examination, the expert continued as follows:
Q. "You also conceded though, it's not traceable?
A. "That's correct. We do not have yearly or monthly statements." Appellee's expert concluded that he utilized estimates and assumptions to "conservatively" determine Appellee's separate property interest in his defined contribution plan.
 {¶ 26} On appeal, Appellee urges that the trial court did not err because his expert determined his separate property interest in a conservative manner. We find no support for such an argument.
 {¶ 27} Pursuant to R.C. 3105.171(A)(6)(b), "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." "The party seeking to have the commingled property deemed separate has the burden of proof, by a preponderance of the evidence, to trace the asset to his or her separate property."West v. West, (Mar. 13, 2002) 9th Dist. No. 01CA0045, at *5;Modon v. Modon (1996), 115 Ohio App.3d 810, 815. In the instant matter, Appellee did not meet his burden by providing evidence of his separate property.
 {¶ 28} In performing his calculations, Appellee's expert relied upon reports primarily created in 1989 when Appellee withdrew funds from the account. The expert then assumed that Appellee had made contributions to the plan in the amount of 6% per year of Appellee's salary since the parties had married in 1984. While the plan caps the employer's contributions at 75% of 6% of Appellee's salary, the documentation relied upon by the expert does not cap Appellee's contributions at 6%. The plan itself states that "[Appellee] may contribute additional funds up to a maximum overall total of 10%." Accordingly, without documentation, the expert could not have determined the amount of Appellee's actual contributions to the plan after the parties were married. Absent evidence of Appellee's contributions, the expert's calculations were nothing more than guesswork. Accordingly, Appellee failed to meet his burden to trace his separate property. As no evidence was provided to support Appellee's claim, the trial court abused its discretion in awarding him a separate property interest. Appellant's third assignment of error is sustained.
 ASSIGNMENT OF ERROR V
"THE TRIAL COURT ERRED IN ISSUING A SUPPLEMENTAL ORDER TO DIVIDE THE PUBLIC EMPLOYEES RETIREMENT SYSTEM PENSION BENEFIT[.]"
 {¶ 29} In her fifth assignment of error, Appellant asserts that the trial court erred in issuing a supplemental order to divide her pension benefit. Specifically, Appellant urges that the trial court improperly awarded Appellee an interest in the cost-of-living adjustments to her pension. We agree.
 {¶ 30} R.C. 3105.821 provides as follows:
"The monthly benefit used under division (D)(2) of section3105.82 of the Revised Code to determine the amount to be paid an alternate payee from a monthly benefit shall be whichever of the following applies:
"(A) If the participant is receiving a monthly benefit, the monthly benefit shall be the benefit the participant is receiving at the time the decree of divorce or dissolution becomes final;
"(B) If the participant has applied for but is not yet receiving a monthly benefit, the monthly benefit shall be the benefit for which the participant is eligible;
"(C) If the participant has not applied for a benefit, the monthly benefit shall be the benefit calculated at the time the participant elects to take it."
In support of her argument, Appellant relies solely uponTobias v. Tobias, 2d Dist. No. 2003-CA-38, 2003-Ohio-6679. While this Court has not ruled on the precise question presented, we find the reasoning in Tobias to be persuasive.
 {¶ 31} In Tobias, the Second District found that wife was not entitled to cost-of-living adjustments to husband's pension. In Tobias, wife was awarded a portion of husband's pension in the divorce decree dated October 17, 1997. Husband began receiving his monthly benefit in June of 2001 and received a cost-of-living adjustment the following year. Accordingly, R.C.3105.821(A) applied, and our sister court determined that no cost-of-living adjustments could be added to husband's initial monthly benefit. Id. at ¶ 20.
 {¶ 32} In so holding, the court noted as follows:
"It is clear from reading this section that the ex-spouse's benefit is limited to the initial amount of the member's monthly benefit and to any COLA increase accrued prior to the date of the divorce. In other words, the new law does not provide for future COLA increases for ex-spouses of members." Id.
In the instant matter, Appellant has not yet applied for benefits. Accordingly, R.C. 3105.821(C) applies, and Appellee's monthly benefit will not be calculated until Appellant elects to receive her benefit. We agree that under the plain language of the statute, Appellee is entitled to a monthly benefit that is calculated at the time Appellant elects to receive her benefits. However, there is no provision that would permit Appellee to receive cost-of-living adjustments subsequent to the calculation of Appellant's benefit.
 {¶ 33} Accordingly, the statute requires that Appellee's benefit be calculated at the time Appellant elects to receive her benefit. When the trial court attempted to order that Appellee's benefit continue to be modified at a later date to include cost-of-living adjustments, it contravened the statute. Accordingly, we find that the trial court erred. Appellant's fifth assignment of error is sustained.
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ERRED IN DENYING APPELLANT A `RIGHT OF SURVIVORSHIP' IN THE UNITED AIRLINES DEFINED BENEFIT PLAN[.]"
 ASSIGNMENT OF ERROR VI
"THE TRIAL COURT ERRED IN DIVIDING THE EQUITY IN THE MARITAL RESIDENCE[.]"
 {¶ 34} In her fourth assignment of error, Appellant contends that the trial court erred when it failed to award her a right of survivorship in Appellant's defined benefit plan. In her final assignment of error, Appellant contends that the trial court erred when it failed to award her the value of the appreciation of the marital residence as separate property. In addition, Appellant asserts that the trial court erred in failing to assess half of the refinancing costs of the marital residence. This Court disagrees.
 {¶ 35} In divorce proceedings, the trial court must divide marital property in an equitable manner. R.C. 3105.171(C)(1). A trial court is vested with broad discretion when fashioning this division of property. Bisker v. Bisker (1994),69 Ohio St.3d 608, 609. Accordingly, absent an abuse of discretion, a trial court's division of marital property will be upheld by a reviewing court. West, supra, at *6.
 {¶ 36} Appellant first argues that the trial court erred when it failed to award her a right of survivorship in Appellee's pension. This Court finds no error in the trial court's division of property.
 {¶ 37} By statute, Appellee has no right of survivorship in Appellant's Ohio Public Employee's pension. In order to place the parties on equal footing, the trial court refused to grant Appellant such a right in Appellee's pension. Rather, the trial court ordered that both parties maintain insurance on the other party to compensate for not maintaining a right of survivorship. Appellant provided no evidence below that maintaining insurance in such a manner would be more costly for her than Appellee maintaining similar insurance. Rather, Appellant asserts that it is simply unfair to punish her because a statute eliminates Appellee's right of survivorship. As noted above, the trial court has broad discretion in fashioning an appropriate distribution of property. As the trial court's order placed the parties in substantially similar financial positions, we cannot say that the trial court abused its discretion.
 {¶ 38} In support of her claim that she is entitled to $14,000 of separate property due to appreciation of the martial residence, Appellant relies upon her testimony that she utilized $40,000 of her separate property to build an addition to the home. Appellant asserts that the value of the home was $210,000 prior to the addition and was $264,000 after the addition. We find that Appellant's assertions lack merit.
 {¶ 39} In her own testimony, Appellant stated that the parties spent between $60,000 and $70,000 remodeling the marital residence. Accordingly, from Appellant's testimony, there existed no appreciation on the monies invested by the parties. Rather, the value of the marital residence increased by less ($54,000) than the parties expended in remodeling ($60,000-$70,000). Accordingly, the trial court properly determined that Appellant was not entitled to any appreciation on her separate property contribution to the marital residence.
 {¶ 40} Appellant further argues that the trial court abused its discretion when it failed to assess half the costs of the refinancing of the martial residence. We disagree.
 {¶ 41} Early on in the course of the trial court proceedings, it was determined that Appellee was entitled to a portion of the equity in the marital residence. In order to provide Appellee with his portion, Appellant refinanced the home at a cost of nearly $8,000. Appellant has not argued that the overall division of property was inequitable. Rather, she focuses solely upon the failure of the trial court to divide the cost of refinancing. This Court cannot say that the trial court's actions were unreasonable, arbitrary or unconscionable.
 {¶ 42} Appellee testified that he did not agree to the refinancing of the martial residence. Rather, he testified that the refinancing was solely Appellant's decision. In contrast, Appellant testified that the parties mutually agreed to refinance the home. It is undisputed, however, that the parties never attempted to allocate the costs of refinancing prior to Appellant voluntarily refinancing the home, and that the agreement drafted by the parties failed to reference dividing the cost of the refinancing.
 {¶ 43} Upon review, we cannot say that the trial court abused its discretion in dividing the parties' property. The trial court was faced with the arduous task of dividing all of the parties' property in a highly contested matter. A review of the trial court's docket indicates that the parties contested nearly every item of property. As a result, the trial court held numerous hearings, received voluminous reports detailing the parties' finances, and issued lengthy orders in an attempt to equitably divide the parties' property. Reviewing the totality of the property division effectuated by the trial court, we cannot say that such a division is inequitable. Accordingly, Appellant's fourth and sixth assignments of error are overruled.
 III. {¶ 44} To the extent noted herein, Appellant's first, second, third, and fifth assignments of error are sustained. Appellant's fourth and sixth assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Slaby, P.J., Carr, J., Concur.
[1] Within her assignment of error, Appellant raises numerous sub-issues which will be addressed individually.