{¶ 1} Defendant-Appellant, Rena L. Clark, appeals the judgment of the Union County Court of Common Pleas, Domestic Relations Division, adopting the shared parenting plan submitted by Plaintiff-Appellee, Thomas J. Clark, and ordering division of the parties' joint financial accounts. On appeal, Rena asserts that the trial court erred in approving the shared parenting plan; that the trial court abused its discretion by adopting the alternating weekly visitation schedule; that the trial court abused its discretion by awarding each party a tax dependency exemption; that the trial court abused its discretion in calculating child support; and, that the trial court abused its discretion by ordering division of the financial accounts. Based on the following, we affirm in part, reverse in part, and remand the judgment of the trial court for further proceedings consistent with this opinion.
 {¶ 2} Rena and Thomas were married in September 1994 and have two minor children, Megan, born April 28, 1997, and Lauren, born April 21, 2000 (hereinafter Megan and Lauren jointly referred to as "the children").
 {¶ 3} In March 2006, Thomas filed for divorce and submitted a shared parenting plan.[1] The shared parenting plan provided, among other things, that the parties would alternate the children on a weekly basis; that the parties would each *Page 3 
claim one child as a tax dependency exemption; and, that neither party would pay child support. Additionally, Thomas attached an affidavit of financial disclosure to his complaint for divorce, which identified checking accounts and a savings account in the list of the parties' property, assets, and debts. Subsequently, Rena opposed shared parenting and requested that she be designated the residential parent.
 {¶ 4} In April 2006, the magistrate issued temporary orders, ordering Thomas to pay Rena monthly child support in the amount of $382.82 and adopting the mediated visitation schedule agreed upon by the parties, which provided that Rena would keep the children during the school week; that, on his days off, Thomas would pick the children up from school and return them to Rena's by 7:00 p.m.; that the parties would keep the children on alternate weekends; and, that the parties agreed to a schedule resembling shared parenting for the summer months.
 {¶ 5} In May 2006, Thomas filed his pre-trial property distribution worksheet and identified as marital property a joint savings account with Huntington National Bank in the amount of $1,500 and a joint checking account with Huntington National Bank in the amount of $3,600.
 {¶ 6} In June 2006, Rena requested that the trial court conduct in camera interviews with the children. *Page 4 
 {¶ 7} On July 12, 2006, the trial court conducted in camera interviews with the children, finding that Megan was distressed about the parties' frequent fighting; that Megan wanted a shared parenting arrangement; and, that Lauren was incompetent to express her wishes. Additionally, the trial court commenced the divorce hearing, which it continued until July 31, 2006, and completed at that time.
 {¶ 8} At the hearings, the following testimony was presented.
 {¶ 9} Thomas testified that he and Rena made a joint decision to send the children to private school because Megan was having problems; that he and Rena were able to coordinate their summer visitation schedule; that he worked three twelve-hour shifts per week, usually consisting of Monday, Tuesday, and Wednesday one week and then Wednesday, Thursday, and Friday the next week; that he worked the 7:00 p.m. to 7:00 a.m. shift; that he also worked about ten hours of overtime per month and worked at a home care job one day per week; that he provided transportation for the children to and from school; that he did not like the temporary order visitation arrangement during the school year because, while he saw the children nearly every day, he did not get to spend enough time with them; that he liked the alternating weekly schedule for the summer under the temporary order; that shared parenting is best for the children because he adds to what Rena does for them; that he has a good relationship with the children; that he *Page 5 
has no problem communicating with Rena and communicated with her often regarding the visitation schedule; and, that he is temporarily living with his mother.
 {¶ 10} On cross-examination, Thomas admitted that he and the children stay at his grandfather's farm when he has the children overnight and that because his one-week-on, one-week-off work schedule is not a calendar week, the parties' visitation schedule would have to conform to his work schedule.
 {¶ 11} Rena testified that Thomas only began taking the children to his grandfather's farm for overnight stays after Lauren developed an ear infection from the smoke in his mother's house; that Thomas consistently makes bad decisions regarding the children; that Thomas does not enforce a schedule with the children; that shared parenting would be problematic because, due to Thomas' work schedule, the children would be shuffled between both residences during the school week; that she has a great relationship with the children; that her annual salary is $85,500; and, that she had received $56,000 in bonuses as of the date of the hearings.
 {¶ 12} On cross-examination, Rena admitted that Thomas' work schedule allowed him to pick the children up from school on a regular basis, but she did not want him to because he only feeds them fast food; that she does not want to take the children from Thomas, but wants to limit their interaction with him because *Page 6 
Megan has anger outbursts like him; and, that it is important to discuss major decisions regarding the children with Thomas, but she does not want to continue to bear the entire burden of their school tuition.
 {¶ 13} On redirect-examination, Rena testified that Thomas was never active in raising the children until after the divorce proceedings were initiated and that she was willing to work with Thomas to make sure he was not excluded from time with the children.
 {¶ 14} In September 2006, the magistrate issued its decision ordering shared parenting and approving the shared parenting plan submitted by Thomas, but amending it to include that Rena pay Thomas monthly guideline child support in the amount of $1,317.28. Additionally, the magistrate ordered a division of the marital property, assets, and debts. Regarding the parties' financial accounts, the magistrate stated that the parties had joint checking and savings accounts, ordered them to be divided equally between the parties, and ordered equal division of Rena's $22,000 stock option. Thereafter, Rena objected to the magistrate's order of shared parenting, the visitation schedule under the shared parenting plan, and the award of the $22,000 stock option to Thomas. In her objection to the stock option, Rena stated that she had already cashed the stock option and deposited it into the parties' joint checking account and that the magistrate's order of division *Page 7 
of the stock option and the joint checking account would result in a double recovery to Thomas.
 {¶ 15} In October 2006, the trial court sustained Rena's objection regarding the stock option, but overruled her objections to the shared parenting order and the visitation schedule. Regarding the visitation schedule under the shared parenting plan, the trial court noted that, while Thomas could not fully exercise the visitation schedule under the shared parenting plan, it was a "much more functional companionship schedule than the plan espoused" by Rena. (October 2006 Judgment Entry, p. 3).
 {¶ 16} In November 2006, the trial court issued the final decree of divorce, in which it adopted the magistrate's decision. In doing so, the trial court indicated that it had considered the factors in R.C.3109.04(B), R.C. 3109.04(F), and R.C. 3109.04(G). Specifically, the trial court made express findings regarding each factor in R.C.3109.04(F), finding that Thomas wanted shared parenting, while Rena wanted to be the sole residential parent; that, during the in camera interview, Megan was distressed over the parties' fighting and Lauren was incompetent to testify; that Rena is primarily responsible for taking the children to the doctor and to their extra-curricular activities; that Rena's mother has a loving relationship with the children; that the children do well in school; that the parties made a marital decision to enroll the children in private school; that both parties are in *Page 8 
good physical health; that Lauren has issues with ear infections and has very sensitive skin; that Rena had a poor regard for Thomas' parenting skills and did not have anything positive to say about him; that the evidence did not justify Rena's attitude about Thomas' parenting skills; that it had concerns that Rena would not honor and facilitate Thomas' parenting time, rights, or visitation; that neither parent had been convicted of or pled guilty to a criminal offense involving child abuse or neglect; that neither parent had willfully denied the other parent's right to parenting time; that neither parent had established or planned to establish a residence outside of Ohio; that, although Rena indicated she could not communicate or cooperate with Thomas, she depended on him on a daily basis to pick up the children from school and was able to make a joint decision with him about private schooling; that Rena did not have the ability to encourage the sharing of love, affection, and contact between the children and Thomas; that neither parent had a history of child abuse, spousal abuse, or other domestic violence; that the parties live fourteen miles apart; and, that no guardian ad litem was involved in the case.
 {¶ 17} The trial court concluded that "[a]fter consideration of the above factors, the Court finds that shared parenting is in the best interest of the parties'] minor children" and adopted the shared parenting plan submitted by Thomas, including the alternating weekly visitation schedule and tax dependency *Page 9 
exemption for each party, but amended it to include that Rena pay Thomas monthly child support in the amount of $1,317.28. In calculating Rena's income for child support purposes, the trial court added Rena's bonuses of $56,000 to her base salary of $85,500, for a total income of $141,500. Additionally, the trial court ordered the parties to equally divide the children's tuition expenses and ordered division of the July 31, 2006 balances in the parties' joint savings and checking accounts.
 {¶ 18} It is from this judgment that Rena appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT COMMITTED AN ERROR OF LAW IN APPROVING THE SHARED PARENTING PLAN FOR IT FAILED TO COMPLY WITH R.C. 3109.04(D)(1)(a)(iii).
 Assignment of Error No. II IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO ADOPT THE ALTERNATING WEEKLY SCHEDULE SHARED PARENTING PLAN.
 Assignment of Error No. III IT WAS AN ABUSE OF DISCRETION TO AWARD EACH PARTY A TAX DEPENDENCY EXEMPTION.
 Assignment of Error No. IV THE TRIAL COURT ABUSED ITS DISCRETION IN CALCULATING CHILD SUPPORT. *Page 10 
 Assignment of Error No. V IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO ORDER THE DIVISION OF THE FINANCIAL ACCOUNT.
 {¶ 19} Due to the nature of Rena's assignments of error, we elect to address her first and second assignments of error together.
 Assignments of Error Nos. I II {¶ 20} In her first assignment of error, Rena asserts that the trial court committed an error of law in approving the shared parenting plan because it failed to comply with R.C. 3109.04(D)(1)(a)(iii). Specifically, Rena contends that, although the trial court found that shared parenting was in the best interests of the children, it failed to enter findings of fact and conclusions of law to support its approval of the shared parenting plan. We disagree.
 {¶ 21} In her second assignment of error, Rena asserts that the trial court abused its discretion by adopting the alternating weekly visitation schedule contained in the shared parenting plan. Specifically, Rena contends that there was insufficient evidence to demonstrate that the alternating weekly visitation schedule was in the best interests of the children due to Thomas' work schedule. Again, we disagree.
 {¶ 22} Decisions concerning child custody matters rest within the sound discretion of the trial court. Miller v. Miller (1988),37 Ohio St.3d 71; Erwin v. *Page 11 Erwin, 3d Dist. No. 14-05-45, 2006-Ohio-2661, ¶ 12. Custody determinations are some of the most difficult and agonizing decisions a trial court must make, and therefore appellate courts must grant wide latitude to its consideration of the evidence. Davis v. Flickinger
(1997), 77 Ohio St.3d 415, 418. Thus, we will not reverse a child custody decision that is supported by a substantial amount of competent, credible evidence absent an abuse of discretion. Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21, syllabus. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 23} Moreover, the trier of fact is in the best position to observe the witnesses, weigh evidence and evaluate testimony. In re Brown
(1994), 98 Ohio App.3d 337; see also Davis, 77 Ohio St.3d at 418;Bechtol, 49 Ohio St.3d at 23. Therefore, "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Seasons Coal Co., Inc. v. City ofCleveland (1984), 10 Ohio St.3d 77, 81.
 {¶ 24} R.C. 3109.04 governs allocations of parental rights and responsibilities and requires a trial court to consider the best interests of the *Page 12 
children before making any allocations. R.C. 3109.04(B)(1). R.C.3109.04(F)(1) contains the following requisite factors a trial court must consider in determining the best interests of the children:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to [R.C. 3109.04(B)] regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * * (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state. *Page 13 
R.C. 3109.04(F)(1)(a)-(j). Additionally, when shared parenting in particular is at issue, the trial court must also consider the factors in R.C. 3119.23[2] and the following factors in R.C. 3109.04(F)(2):
 (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.
R.C. 3109.04(F)(2)(a)-(e).
 {¶ 25} In an action for custody, one or both parents may request shared parenting and submit a shared parenting plan. R.C.3109.04(D)(1)(a); R.C. 3109.04(G). Where only one parent requests shared parenting and submits a shared parenting plan, R.C.3109.04(D)(1)(a)(iii) governs, providing, in pertinent part:
 The court shall review each plan filed to determine if any plan is in the best interest of the children. If the court determines that one of the filed plans is in the best interest of the children, the court may approve the plan. * * * If the court approves a plan under this division, either as originally filed or with submitted changes, * * * the court shall enter in the record of the case *Page 14 
 findings of fact and conclusions of law as to the reasons for the approval * * *.
R.C. 3109.04(D)(1)(a)(iii) (emphasis added). Thus, it is not enough for a trial court to summarily find that shared parenting is or is not in the best interests of the children; instead, the trial court must make specific, delineated findings of fact and conclusions of law to support its finding. Erwin v. Erwin, 3d Dist. No. 14-04-37, 2005-Ohio-1603, ¶ 12;Harris v. Harris (1995), 105 Ohio App.3d 671, 678-79. However, "a trial court may substantially comply with R.C. 3109.04(D)(1)(a)(iii), without providing a detailed analysis, if its reasons for approval or denial of the shared parenting plan are apparent from the record."Erwin, 2005-Ohio-1603, ¶ 12, referencing Hall v. Hall (1997), 3d Dist. No. 14-97-03, 1997 WL 282452.
 {¶ 26} Here, Rena first argues that the trial court failed to comply with the requirements under R.C. 3109.04(D)(1)(a)(iii) because, although it made the requisite findings under R.C. 3109.04(F) regarding the best interests of the children, it did not make findings of fact and conclusions of law regarding its approval of the shared parenting plan. Essentially, Rena urges us to interpret R.C. 3109.04(D)(1)(a)(iii) as requiring a trial court to not only find whether shared parenting is in the best interests of the children and support that finding with specific, delineated findings of fact and conclusions of law, but also to require the trial court to make additional findings, separate from those regarding the best interests of the children, to support its decision. We decline to read such a *Page 15 
requirement into the statute. Indeed, relevant case law makes clear that a trial court fails to comply with R.C. 3109.04(D)(1)(a)(iii) when it merely makes a conclusory statement that shared parenting is or is not in the best interests of the children, but fails to make any specific findings regarding the best interests of the children. See, e.g. Erwin, 2005-Ohio-1603; Harris, 105 Ohio App.3d 671; Swain v.Swain, 4th Dist. No. 04CA726, 2005-Ohio-65; Hall, supra.
 {¶ 27} Here, as Rena concedes, the trial court made specific, detailed findings regarding each and every factor enumerated in R.C.3109.04(F)(1) and R.C. 3109.04(F)(2) and found that, based on its analysis of those factors, shared parenting was in the best interests of the children. R.C. 3109.04(D)(1)(a)(iii) requires nothing more. Thus, we find that the trial court made the requisite findings of facts and conclusions of law in compliance with R.C. 3109.04(D)(1)(a)(iii).
 {¶ 28} Regarding the alternating weekly visitation schedule, Rena argues that the record contains insufficient evidence to demonstrate that it was in the best interests of the children. However, as noted above, the trial court considered all of the requisite statutory factors and made the necessary findings of fact and conclusions of law to support its approval of the shared parenting plan, which included the alternating weekly visitation schedule. While the record contained evidence that Thomas' work schedule does not comprise a calendar week and *Page 16 
would require the children to alternate from one parties' residence to another's during the school week, the record also contained evidence that the parties were able to coordinate the visitation schedules, could communicate with each other, and that the children could spend more time with Thomas under shared parenting.
 {¶ 29} Given that the trial court was in the best position to observe the witnesses, weigh the evidence and evaluate the testimony and that the record contained substantial competent, credible evidence to support the alternating weekly visitation schedule, we find that the trial court did not abuse its discretion in adopting the alternating weekly visitation schedule.
 {¶ 30} Accordingly, we overrule Rena's first and second assignments of error.
 Assignment of Error No. III {¶ 31} In her third assignment of error, Rena asserts that the trial court abused its discretion in awarding each party a tax dependency exemption. Specifically, Rena contends that the trial court failed to consider the factors enumerated under R.C. 3119.82. We disagree.
 {¶ 32} We note at the outset that Rena failed to object to the magistrate's September 2006 decision awarding each party a tax dependency exemption, calculating child support, and ordering division of the financial accounts. Where a party fails to object to a magistrate's factual findings or legal conclusions, that *Page 17 
party waives the right to challenge the trial court's adoption of such findings or conclusions on appeal, except as to plain error. Civ.R. 53(3)(b)(iv). Thus, we must review Rena's third, fourth, and fifth assignments of error under the plain error standard.
 {¶ 33} "`In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" Ordean v.Ordean, 3d Dist No. 17-06-15, 2007-Ohio-3979, ¶ 14, quoting Goldfuss v.Davidson, 79 Ohio St.3d 116, 1997-Ohio-401, syllabus.
 {¶ 34} R.C. 3119.82 governs designation of a parent for purposes of a federal income tax dependency exemption, providing, in pertinent part:
 Whenever a court issues * * * a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes as set forth in section 151 of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C. 1, as amended. If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children. If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children * * *. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in *Page 18 making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.
R.C. 3119.82.
 {¶ 35} Under the plain language of the statute, a trial court is not required to state on the record its reasons for awarding tax dependency exemptions. In re Taylor G., 6th Dist. No. L-05-1197, 2006-Ohio-1992, ¶ 26, citing Streza v. Streza, 9th Dist. No. 05CA008644, 2006-Ohio-1315, ¶ 12. However, "[w]hile the trial court does not need to state a basis for allocating the exemption, the record does need to include financial data in relation to the above factors to support the trial court's decision." Ankney v. Bonos, 9th Dist. No. 23178, 2006-Ohio-6009, ¶ 40, citing Streza, 2006-Ohio-1315, at ¶ 12-13 and Banning v. Banning (1996), 2d Dist. No. 95 CA 79, 1996 WL 354930.
 {¶ 36} Here, Rena argues that the trial court erred in awarding each party a tax dependency exemption because it did not consider the factors enumerated under R.C. 3119.82, citing the above cases. Although we acknowledge the findings of the above cited cases, we note that they dealt with situations where the alleged error was subject to an abuse of discretion standard and where the record was completely devoid of any of the requisite factors a trial court must consider. Conversely, the record here contained evidence of at least some of the factors, *Page 19 
such as the parties' incomes, the amount of time spent with each parent, and the financial circumstances of the parents. Under these circumstances, we cannot say that the trial court's failure to consider any other factors under R.C. 3119.82 rises to the level of plain error. Thus, we find that the trial court did not commit plain error in awarding each party a tax dependency exemption.
 {¶ 37} Accordingly, we overrule Rena's third assignment of error.
 Assignment of Error No. IV {¶ 38} In her fourth assignment of error, Rena asserts that the trial court abused its discretion in calculating child support. Specifically, Rena contends that the trial court failed to average her bonuses and income over a three-year period, failed to consider a deviation based upon the equal time the parties spend with the children, and erred in naming her the obligor after it had designated Thomas as the obligor in the temporary orders.
 {¶ 39} Before reaching the merits of Rena's argument, we sua sponte address whether the trial court had the authority to modify Thomas' shared parenting plan to order Rena to pay him child support.
 {¶ 40} Under R.C. 3109.04(D)(1)(a)(iii), when one party requests shared parenting and submits a shared parenting plan, the trial court must review the plan and do one of the following:[3] (1) if it determines the plan is in the best interest of *Page 20 
the children, adopt the plan; (2) if it determines the plan is not in the best interest of the children, order each parent to submit appropriate changes to the plan to meet the court's objections; (3) if changes to the plan are submitted to meet its objections and the plan as changed is in the best interest of the children, approve the plan with the changes; or, (4) if changes to the plan are not submitted to meet its objections or are not in the best interest of the children, reject the request for shared parenting and proceed as if no request had ever been made. Thus, "if a trial court has objections to portions of a submitted shared parenting plan, it may request that the party file a modified shared parenting plan to address its concerns."Schattschneider v. Schattschneider, 3d Dist. No. 2-06-24,2007-Ohio-2273, at ¶ 6, citing DaSilva v. DaSilva, 12th Dist. No. CA2004-06-127, 2005-Ohio-5475, at ¶ 11 and R.C. 3109.04(D)(1)(a)(iii); see also McClain v. McClain (1993), 87 Ohio App.3d 856, 857 ("A court may determine that one of the submitted plans is in the best interest of the children and adopt that plan verbatim. Barring adoption of one of the submitted plans, however, a court may only make suggestions for modification of the plans to the parties.") (citations omitted). The trial court does not have the authority to create its own shared parenting plan. Schattschneider, 2007-Ohio-2273, at ¶ 6;McClain, 87 Ohio App.3d at 857. Instead, "a satisfactory plan must be filed with the court for adoption; otherwise *Page 21 
the court will not adopt any plan." McClain, 87 Ohio App.3d at 857, citing R.C. 3109.04(D)(1)(b).
 {¶ 41} Here, the trial court stated that it found Thomas' shared parenting plan to be in the best interest of the children. However, the trial court obviously had an objection to that portion of the plan providing that neither party would pay child support. Rather than requesting Thomas to modify the shared parenting plan in order to meet its objections, as it was statutorily required to do, the trial court sua sponte modified the shared parenting plan and ordered Rena to pay Thomas child support. Although Rena did not raise this issue, such a modification of the shared parenting plan was clearly contrary to law and, therefore, constituted plain error. Consequently, we need not address the specific merits of Rena's stated argument.
 {¶ 42} Accordingly, we sustain Rena's fourth assignment of error.
 Assignment of Error No. V {¶ 43} In her fifth assignment of error, Rena asserts that the trial court abused its discretion by ordering division of the financial account. Specifically, Rena contends that no evidence was presented that any joint banking accounts existed at the time of the final hearing. We disagree.
 {¶ 44} As noted above, we must apply the plain error standard of review. *Page 22 
 {¶ 45} R.C. 3105.171 governs division of marital and separate property, and provides that "the division of marital property shall be equal." R.C. 3105.171(C)(1).
 {¶ 46} Here, Rena argues that the trial court erred in ordering equal division of the parties' joint bank accounts because no evidence was presented regarding their existence. However, a review of the record indicates that Thomas consistently indicated in his filings that a joint checking and savings account existed and that he identified the amounts in his pre-trial statement. Rena did not dispute Thomas' assertions in any of her filings and did not file any documentation to demonstrate that the joint accounts had been closed or no longer existed. In fact, in her objection to the magistrate's September 2006 decision ordering division of Rena's stock option, Rena herself indicated that the parties had a joint checking account because she stated that she had already cashed the stock option and deposited it into the parties' joint checking account. Thus, we find that the trial court did not commit plain error in ordering division of the parties' joint bank accounts.
 {¶ 47} Accordingly, we overrule Rena's fifth assignment of error.
 {¶ 48} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued in her first, second, third, and fifth assignments of error, but having found error prejudicial in the particulars assigned and argued in *Page 23 
her fourth assignment of error, we affirm in part, reverse in part, and remand the judgment of the trial court for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] In a separate action, Rena also filed for divorce. The trial court consolidated the cases, treating Rena's complaint for divorce as an answer and counterclaim to Thomas' complaint for divorce.
[2] R.C. 3119.23 enumerates the factors a trial court may consider in determining whether to grant a deviation from the guideline child support amount.
[3] The trial court may order the other party to submit a shared parenting plan and then consider both plans. R.C. 3109.04(D)(1)(a)(iii). Here, the trial court did not order Rena to submit a shared parenting plan. *Page 1