[Cite as *Cichanowicz v. Cichanowicz*, 2013-Ohio-5657.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

LISA CICHANOWICZ, NKA LUTZ,

    PLAINTIFF-APPELLEE,                 CASE NO.  3-13-05

    v.

PHIL CICHANOWICZ,                      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Crawford County Common Pleas Court
Domestic Relations Division
Trial Court No. 98-DR-0152

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:  December 23, 2013

**APPEARANCE:**

    *Philip H. Cichanowicz,* **Appellant**

**PRESTON, P.J.**

{**¶1**} Defendant-appellant, Phil Cichanowicz ("Phil"), appeals the January 10, 2013 judgment entry of the Crawford County Court of Common Pleas, Domestic Relations Division, establishing a final parenting-time schedule, finding plaintiff-appellee Lisa Cichanowicz, now known as Lisa Lutz ("Lisa"), in contempt of court, and awarding Phil some of the relief he requested in his motions for contempt. For the reasons that follow, we affirm in part and reverse in part.

{**¶2**} This case was before us in 2008, and we recited the following facts in that opinion:

Phil and plaintiff-appellee, Lisa Cichanowicz (hereinafter "Lisa"), were married on May 9, 1987. (Doc. No. 1). Three children were born as issue of the marriage: Marie Elise Cichanowicz (d.o.b. */*/90) (hereinafter "Marie"); Nicole Erin Cichanowicz (d.o.b. */*/92) (hereinafter "Nicole"); and Sarah Ann Cichanowicz (d.o.b. */*/96) (hereinafter "Sarah") (hereinafter collectively "the children"). (*Id.*). On May 3, 1999, the parties were divorced, and Lisa was named sole residential parent and legal custodian of the parties' three minor children. (Doc. No. 111 at 2). Since the divorce, Lisa has remarried to Craig Lutz. (*Id.* at 3).

On April 12, 2005, Phil filed a motion with the trial court requesting a modification of custody and seeking to be named the children's residential parent. (Doc. No. 78). On December 12, 2005, the Magistrate ordered the parties to attend counseling in an effort to improve their communication. (Doc. No. 91). The case was stayed and then reactivated on June 30, 2006 after counseling was terminated. (Doc. No. 111 at 2). The matter was scheduled for hearing in September 2006, but the hearing was continued because Phil had changed counsel and a custody evaluation needed to be completed. (*Id.*).

The motion came on for hearing on November 15, 16, and 28, 2006 and January 25, 2007 before the Magistrate. (*Id.*). On March 2, 2007, the Magistrate ordered that Lisa remain the children's residential parent; however, the Magistrate also ordered: joint counseling for Phil and the children; individual counseling for Lisa; and more visitation time between Phil and his children. (*Id.* at 14-17). On March 15, 2007, Phil filed objections to the Magistrate's order with the trial court. (Doc. No. 113). On January 29, 2008, the trial court overruled Phil's objections and adopted and approved the Magistrate's Decision. (Doc. No. 135).

*Cichanowicz v. Cichanowicz*, 3d Dist. Crawford No. 3-08-04, 2008-Ohio-4779, ¶ 2-4.

**{¶3}** Phil appealed the trial court's January 29, 2008 judgment entry, and on September 22, 2008, this Court affirmed the trial court's decision to adopt and approve the magistrate's March 2, 2007 decision. (Doc. Nos. 139, 162, 163); *Cichanowicz*, 2008-Ohio-4779, at ¶ 28.

**{¶4}** While that appeal was pending before this Court, the parties continued to litigate in the trial court over contempt-of-court allegations, tax exemptions, and child support. (*See* Doc. Nos. 114, 130, 132, 136, 144, 145, 146, 148, 149, 156, 157, 160).

**{¶5}** On September 10, 2008, the trial court judge sua sponte recused himself and the magistrate from further proceedings, and on October 20, 2008, the Supreme Court of Ohio assigned a new judge to the case, effective September 10, 2008. (Doc. Nos. 161, 164).

**{¶6}** On June 29, 2009, Phil filed a motion for contempt, arguing that Lisa violated the March 2, 2007 order by denying him parenting time and by failing to attend counseling. (Doc. No. 166). Phil requested that the trial court schedule an immediate final hearing, jail Lisa for 30 days, award him make-up parenting time, and order Lisa to pay court costs and his attorney's fees. (*Id.*).

{¶7} The trial court held a telephone status conference on July 9, 2009, in which counsel for Lisa and Phil participated. (*See* Doc. No. 172). Three weeks after that status conference, the trial court sua sponte joined as party defendants Phil and Lisa's minor children and appointed guardian ad litem ("GAL") Heather M. Cockley to determine their best interests. (*Id.*).

{¶8} On August 20, 2009, Phil filed a "motion to revise [GAL]'s involvement." (Doc. No. 175). In that motion, Phil requested that the GAL's duties not commence until after the trial court held a hearing on Phil's June 29, 2009 contempt motion, if the trial court determined based on its findings at the hearing that a GAL's involvement was warranted. (*Id.*).

{¶9} On September 4, 2009, the trial court held a partial hearing on Phil's June 29, 2009 motion for contempt. (*See* Sept. 4, 2009 Tr. at 2); (Doc. No. 187). The case docket saw a flurry of activity that day as well. Among the filings was Phil's second motion for contempt, in which he argued that Lisa violated the March 2, 2007 order by denying him parenting time, most of which was to have occurred after Phil's June 29, 2009 motion for contempt. (Doc. No. 178). Phil requested that the trial court jail Lisa for 60 days, award him make-up parenting time, and order Lisa to pay court costs and his attorney's fees. (*Id.*). Also on September 4, 2009, the trial court issued an order requiring that the parties refrain from disparaging one another in the presence of their children. (Doc. No. 180).

Finally on that day, Lisa filed a "motion for modification of parenting time and for in-camera interview," requesting that the trial court interview the minor children in chambers and arguing, without elaborating, that modifying Phil's parenting time would serve the best interests of the minor children. (Doc. No. 183).

{¶10} On September 21, 2009, the trial court filed a judgment entry scheduling Phil's June 29, 2009 contempt hearing for additional hearing days and ordering Lisa and Phil to deposit additional funds toward GAL fees. (Doc. No. 187).

{¶11} On October 22, 2009, GAL Cockley filed under seal a report and recommendation after reviewing documents and interviewing Phil, Lisa, and their two minor daughters. (Doc. No. 189). She recommended that the trial court find Lisa guilty of contempt and sentence her to three days in jail, suspended on condition that she purge her contempt by complying with certain conditions. (*Id.*).

{¶12} The trial court held a hearing on November 12, 2009. (*See* Nov. 12, 2009 Tr. at 10). The parties stipulated at the hearing and in a filing that Lisa was in contempt of court "as alleged, for denial of parenting time pertaining to Nicole and Sarah Cichanowicz, and for failure to abide by previous counseling orders" and that Phil incurred attorney's fees, as set forth in an exhibit, related to his contempt motions. (Nov. 12, 2009 Tr. at 15); (Doc. No. 192). Also at the hearing, the parties agreed to a temporary order, which the trial court filed on December 3,

2009. (Nov. 12, 2009 Tr. at 17-31); (Doc. No. 197). The agreed temporary order set forth parenting time for Phil in November and December 2009 and ordered counseling for the two minor daughters with the goal being their reunification with Phil. (*Id.*); (*Id.*). When it filed the agreed temporary order, the trial court also filed a judgment entry finding Lisa "guilty of contempt, as alleged" in Phil's June 29, 2009 and September 4, 2009 contempt motions and imposing a 10-day jail sentence on Lisa, which the trial court suspended on condition that Lisa, among other things, attend counseling and abide by the agreed temporary order. (Doc. No. 198). The trial court reserved the issues of make-up parenting time and assessment of court costs, GAL fees, and attorney's fees. (*Id.*).

{¶13} On November 19 and 23, 2009, respectively, Phil and Lisa submitted to the trial court documents concerning their income and finances, per the trial court order at the November 12, 2009 hearing. (Doc. Nos. 194, 195).

{¶14} On December 17, 2009, Phil filed a third motion for contempt. (Doc. No. 202). In it, Phil argued that Lisa had failed to provide her email address to Phil, as ordered by the trial court, and failed to provide a full schedule of the children's activities. (*Id.*). He requested that the trial court jail Lisa for 90 days and order Lisa to pay court costs and his attorney's fees. (*Id.*).

{¶15} Three hours after Phil filed his third motion for contempt, Lisa filed handwritten documents containing her email address and the children's schedules. (Doc. No. 203).

{¶16} On December 28, 2009, Phil filed a "motion to dismiss [Lisa's] motion for modification of parenting time." (Doc. No. 206). In that motion, Phil argued that because Lisa failed to pay her share of GAL fees, the trial court should dismiss her motion to modify parenting time, which the trial court said it might do if she failed to pay. (*Id.*).

{¶17} On January 11, 2010, the trial court issued a "consent entry/order approving GAL fees," after GAL Cockley had filed two motions for the approval of GAL fees. (Doc. Nos. 211, 193, 200). In the consent entry, the parties agreed to the release of funds for services rendered by GAL Cockley between July 30, 2009 and November 30, 2009 and to additional GAL fee payments and deposits. (*Id.*). The parties reserved the right to request reallocation of GAL fees for reasons such as contempt of court findings. (*Id.*).

{¶18} On January 13, 2010, the trial court filed a judgment entry finding that Lisa failed to comply with the conditions the trial court required to purge her contempt, and it ordered Lisa jailed for one day. (Doc. No. 212).

{¶19} On February 8, 2010, Phil filed a "motion to vacate agreed temporary order filed December 8, 2009 or in the alternative modify said order." (Doc. No.

213). In that motion, Phil argued that the agreed temporary order was serving "the opposite purpose of its intent" because Phil had no enforceable parenting time. (*Id.*). Although Phil signed his name to the agreed temporary order, he argued that it was "an unstructured, unbounded and undefined Order." (*Id.*).

{¶20} On March 1, 2010, GAL Cockley filed her "third motion for approval of [GAL] fees." (Doc. No. 215).

{¶21} On March 19, 2010, the trial court issued an "order approving [GAL] fees," which ordered the release of funds for services rendered by GAL Cockley between December 1, 2009 and January 29, 2010 and that Phil and Lisa make additional GAL fee payments and deposits. (Doc. No. 218).

{¶22} On May 13, 2010, Phil filed a "request/motion for court to rule on assessment of attorney fees; court costs; and GAL fees pertaining to the contempt finding against [Lisa]." (Doc. No. 219). Phil argued that the trial court should order Lisa to pay his attorney's fees, the court costs, and the GAL fees related to her contempt. (*Id.*).

{¶23} On May 24, 2010, GAL Cockley filed her "fourth motion for approval of [GAL] fees." (Doc. No. 222).

{¶24} On June 8, 2010, GAL Cockley filed under seal her second report and recommendation. (Doc. No. 223). In it, she recommended that Phil have parenting time with Nicole as she desired because she would be 18 on October 22,

2010, she did not wish to have any contact with Phil at that time, and Phil had not had parenting time with her for an extended period of time. (*Id.*). GAL Cockley recommended that Phil have parenting time with Sarah as recommended by Sarah's counselor because Phil had not had unrestricted parenting time with Sarah for an extended period of time, Sarah did not wish to have any contact with Phil at that time, Sarah's counselor reported that there had been some progress in counseling, Phil did not seem to understand the effects of his behavior in alienating his children from him, and until Phil was able to understand those effects and modify his behavior, his children were unlikely to want to have contact with him. (*Id.*). GAL Cockley recommended that the trial court order Phil to begin counseling with a neutral counselor who could help him understand the effects of his behavior on his children. (*Id.*).

{¶25} On June 23, 2010, Phil filed a fourth motion for contempt, this time arguing that Lisa failed to abide by the trial court's order "relative to the minor child(ren)'s orthodontia treatment." (Doc. No. 227). He requested that the trial court jail Lisa for 30 days, "assess all orthodontia costs to [Lisa] or at a minimum grant [Phil] substantial relief as to any payment(s) of orthodontia expenses," and order Lisa to pay court costs and his attorney's fees. (*Id.*).

{¶26} On July 12, 2010, Lisa filed a "motion for modification of parenting time, for in-camera interview, for [Phil] to obtain independent counselor and

complete parenting class." (Doc. No. 231). Lisa requested that the trial court modify parenting time consistent with GAL Cockley's report, interview the minor children in camera, order Phil to enroll in counseling, and order Phil to complete a parenting class. (*Id.*). That same day, Lisa withdrew her September 4, 2009 "motion for modification of parenting time and for in-camera interview." (Doc. No. 232).

{¶27} On July 26, 2010, the trial court filed a journal entry, which it signed on July 21, 2010, ordering Lisa to pay in 12 monthly installments a total of $2,500 toward Phil's attorney's fees, court costs related to Phil's June 29, 2009 contempt motion and May 13, 2010 motion for a ruling, and GAL fees "as of the date of trial" of $1,117.50. (Doc. No. 237).

{¶28} Also on July 26, 2010, the trial court filed an interim journal entry, which it signed on July 22, 2010, allocating responsibility for GAL fees in addition to the amounts for which the trial court allocated responsibility in the journal entry it signed on July 21, 2010. (Doc. No. 236). The trial court ordered GAL Cockley to generate an updated fee statement based on the entries the trial court signed on July 21 and 22, 2010. (*Id.*). The trial court also ordered Phil and Lisa to "equally pay any [GAL] fees for services rendered after July 22, 2010, without further order of the court." (*Id.*).

{¶29} On August 20, 2010, GAL Cockley filed an amended fee statement, as ordered by the trial court in the interim journal entry that it signed on July 22, 2010. (Doc. No. 238).

{¶30} On August 25, 2010, Phil filed his notice of appeal of the trial court's July 26, 2010 journal entry, ordering Lisa to pay fees and costs. (Doc. No. 239).

{¶31} On September 3, 2010, Lisa filed a notice of automatic stay following her filing a Chapter 7 bankruptcy petition with the United States Bankruptcy Court, Northern District of Ohio. (Doc. No. 242).

{¶32} On September 22, 2010, Phil filed a "motion for contempt (fourth motion),"[1] arguing that Lisa failed to pay the first payment installment to Phil for his attorney's fees. (Doc. No. 245). He requested that the trial court jail Lisa for 60 days and order her to pay court costs and his attorney's fees. (*Id.*).

{¶33} Also on September 22, 2010, the trial court filed a judgment entry granting Lisa's July 12, 2010 motion for an in-camera interview and noting that the trial court conducted an interview in the presence of the GAL on August 30, 2010. (Doc. No. 246).

{¶34} On October 6, 2010, the trial court filed a judgment entry containing an interim case management plan. (Doc. No. 248). In it, the trial court ordered that the parties continue to communicate only by email until further order of the

---

[1] Although Phil labeled this contempt motion as his fourth, it was the fifth contempt motion he filed since his initial contempt motion of June 29, 2009.

trial court, that Lisa timely inform Phil of each and every activity involving the minor children, and that the parties and their children proceed with counseling. (*Id.*). The trial court also stated that it would appoint a successor GAL to GAL Cockley following her anticipated motion to withdraw. (*Id.*).

**{¶35}** On October 18, 2010, the trial court issued a judgment entry granting Phil's motion to vacate the December 8, 2009 agreed temporary order. (Doc. No. 252). That same day, the trial court filed an "interim order journal entry of referral," referring Lisa, Phil, and Sarah to mental health professionals. (Doc. No. 253).

**{¶36}** On October 27, 2010, Lisa filed a "motion to refer parties to a mental health professional in network of [Lisa's] health insurance provider." (Doc. No. 255). On November 1, 2010, Phil filed a "notice of financial impossibility," informing the trial court that he would be unable to meet his financial obligation to the mental health professional appointed by the trial court in its October 18, 2010 interim order. (Doc. No. 256).

**{¶37}** On November 18, 2010—following a three-day hearing held on July 12 and September 22 and 29, 2010—the trial court filed a judgment entry, in which it denied Lisa's motion to suspend or terminate Phil's parenting time and granted Lisa's motion to modify Phil's parenting time. (Doc. No. 260). The trial court explained that its decision to grant Lisa's motion to modify Phil's parenting

time and to set a new parenting schedule was "not a final order" and was "part of a plan to attempt to achieve reunification set forth in other orders including future orders." (*Id.*).

**{¶38}** GAL Cockley filed a motion to withdraw as GAL, and the trial court granted it on December 9, 2010. (Doc. Nos. 261, 263).

**{¶39}** On December 27, 2010, a "discharge of debtor in a Chapter 7 case," signed by a United States bankruptcy judge and granting Lisa a discharge of debts, was filed on December 27, 2010. (Doc. No. 264).

**{¶40}** On January 27, 2011, the trial court filed a judgment entry ruling on Phil's contempt motions of December 17, 2009 and June 23, 2010. (Doc. No. 268). The trial court found Lisa in contempt for her failure to timely provide her email address to Phil, her scheduling orthodontia treatment other than that ordered by the trial court, and her failure to inform Phil of all of the minor children's activities. (*Id.*). The trial court did not impose purge conditions, however, noting that they would have been "fruitless" under the circumstances. (*Id.*). The trial court awarded Phil $500 in attorney's fees and ordered Lisa to "pay the costs of these proceedings within sixty days." (*Id.*).

**{¶41}** On February 11, 2011, Phil filed a "notice of Chapter 7 bankruptcy status pertaining to Lisa Lutz," informing the trial court of his belief that Lisa's "Chapter 7 bankruptcy may not in fact be discharged." (Doc. No. 269).

{¶42} Nicole turned 18 on October 22, 2010 and was emancipated on June 5, 2011 when she graduated from high school. (*See* Doc. No. 270). This left Sarah as Phil and Lisa's only remaining minor child. (*See id.*).

{¶43} On July 21, 2011, Phil filed a "motion for attorney fees," in which he requested that the trial court issue an order pursuant to R.C. 3105.73 awarding him $15,000 in additional attorney's fees, which included the attorney's fees he incurred in Lisa's bankruptcy proceeding preserving the trial court's $2,500 award of attorney's fees for his contempt motions. (Doc. No. 271). Phil also requested that the trial court award him courts costs, including GAL fees. (*Id.*).

{¶44} On August 29, 2011, Phil filed a "motion for contempt – sixth [ ] filing," arguing that Lisa failed to honor the parenting time schedule set forth in the November 18, 2010 entry and that she failed to inform Phil of Sarah's activities. (Doc. No. 272). Phil requested that the trial court jail Lisa for 90 days, impose a $500 fine, assess Lisa court costs and his attorney's fees, and order make-up parenting time. (*Id.*).

{¶45} On October 3, 2011, upon Phil's motion, this Court dismissed Phil's appeal of the trial court's July 26, 2010 journal entry, ordering Lisa to pay fees and costs. (Doc. No. 274).

{¶46} On December 12, 2011, Phil filed a "motion for contempt – seventh [ ] filing." (Doc. No. 278). In that motion, Phil argued that Lisa violated the trial

court's orders by continuing to fail to honor his parenting time as set forth in the November 18, 2010 entry, by failing to inform him of Sarah's activities, and by using Sarah to negotiate parenting time with him. (Doc. No. 278). Phil requested that the trial court jail Lisa for 90 days, impose a $500 fine, assess Lisa court costs and his attorney's fees, and order make-up parenting time. (*Id.*).

{¶47} On February 29, 2012, the trial court filed an order, appointing Adam C. Stone as successor GAL. (Doc. No. 284). The trial court ordered that Phil pay GAL Stone's initial deposit of $1,000 and that the "parties shall be responsible for expenses incurred by [GAL Stone] as the result of this appointment." (*Id.*).

{¶48} On March 12, 2012, the trial court filed a "temporary order consolidating entries and issuing additional temporary orders," following a December 12, 2011 hearing. (Doc. No. 285). In that temporary order, the trial court said that it consolidated its entries of September 4, 2009 and November 18, 2009,[2] set forth an updated parenting schedule, and vacated its October 18, 2010 interim order journal entry of referral, in which the trial court referred Lisa, Phil, and Sarah to mental health professionals. (*Id.*).

{¶49} On March 21, 2012, Phil filed an "objection to appointment of second [GAL] and assessment of [GAL] fee deposit." (Doc. No. 286). In that "objection," Phil requested that the trial court vacate its February 29, 2012 order

---

[2] The record does not contain an entry dated November 18, 2009; however, the record does contain an entry dated November 18, *2010*, which established a new parenting-time schedule.

appointing GAL Stone. (*Id.*). Phil objected to the further involvement of a GAL, based on what Phil called Lisa's past resistance to "all third party interventions," and to the trial court's ordering him to pay the entire initial deposit of $1,000 required by GAL Stone. (*Id.*).

{¶50} On April 30, 2012, Phil filed a "motion for contempt – eighth [ ] filing," in which he argued that Lisa was in contempt for failing to honor his court-ordered parenting time on April 5, 2012.[3] (Doc. No. 287). Phil requested that the trial court jail Lisa for 90 days, impose a $1,000 fine, assess Lisa court costs and his attorney's fees, and order make-up parenting time. (*Id.*).

{¶51} On May 16, 2012, Lisa filed a "motion for in-camera interview," in which she requested that the trial court interview Sarah "regarding her wishes and concerns in determining her best interest." (Doc. No. 290).

{¶52} On June 15, 2012, Phil filed a "motion for contempt – ninth [ ] filing." (Doc. No. 292). In that motion, Phil said that Lisa had violated the trial court's orders by stopping all of his parenting time. (*Id.*). He listed five occasions in May and June 2012 when he said Lisa failed to honor his parenting time. (*Id.*). Phil requested that the trial court jail Lisa for at least 90 days, impose a $1,000 fine, assess Lisa court costs and his attorney's fees, and order make-up parenting time. (*Id.*).

---

[3] In Phil's motion, he said he attached an exhibit containing email correspondence that "demonstrat[ed] [Lisa's] unwillingness to abide by the current Court Order." (Doc. No. 286). That exhibit does not appear in the record. (*See id.*).

{¶53} On July 2, 2012, Phil filed a "motion for contempt – tenth [ ] filing." (Doc. No. 298). In that motion, Phil argued that notwithstanding apparent progress in a June 22, 2012 hearing and in-chambers meeting, Lisa failed to honor Phil's court-ordered parenting time on June 24, 2012. (*Id.*). Phil requested that the trial court jail Lisa for the maximum amount of time possible, impose a $1,000 fine, assess Lisa court costs and his attorney's fees, order make-up parenting time, and order Sarah placed in his immediate care. (*Id.*).

{¶54} On August 13, 2012, GAL Stone filed a motion for contempt against Phil. (Doc. No. 302). In it, GAL Stone moved the trial court for an order holding Phil in contempt for failing to pay the $1,000 GAL deposit as ordered by the trial court on February 29, 2012. (*Id.*). GAL Stone requested that the trial court order Phil jailed for the maximum amount of time possible, order Phil to pay GAL Stone's entire fee of $1,531.80, and assess Phil court costs associated with GAL Stone's motion for contempt. (*Id.*).

{¶55} On January 10, 2013—following a September 28, 2012 hearing—the trial court filed its judgment entry that is now on appeal before this Court. (Doc. No. 305). The trial court explained that on September 28, 2012, "this cause came on for hearing on [Phil]'s multiple motions: to modify parenting time filed July 12,

2012,[4] to show cause against [Lisa] filed on August 29, December 12, 2011, April 30, June 15, and July 2, 2012, and for attorney fees filed July 21, 2011; the [GAL]'s motion to show cause against [Phil] filed August 13, 2012, [Lisa]'s motion for an in camera interview, and upon the evidence." (*Id.*). The trial court noted that Phil "also filed objections to appointment of Adam Stone as [GAL] and assessment of his fees as a deposit on March 21, 2012." (*Id.*).

{¶56} In its January 10, 2013 judgment entry, the trial court noted that "on [Phil]'s motion to modify parenting time," GAL Stone testified concerning Sarah's place in the middle of Phil and Lisa's disputes. (*Id.*). The trial court said that "[a]fter [GAL Stone] testified * * *, the parties agreed that it was in the minor child's best interest that the interim order would be the final order of the court." (*Id.*). The trial court then made its November 18, 2010 "prior agreed judgment entry"[5] the final order of the trial court effective September 28, 2012. (*Id.*).

---

[4] The record reflects that there were no filings by any party on July 12, 2012; however, on July 12, *2010*, Lisa, not Phil, filed a "motion for modification of parenting time, for in-camera interview, for defendant to obtain independent counselor and complete parenting class." (Doc. No. 231). At the September 28, 2012 hearing, Phil's attorney responded affirmatively when the trial court stated, "[t]here is also a request, according to [Phil's counsel], for a ruling as a final order on a motion to modify parenting time, filed July 12th, 2010." (Sept. 28, 2012 Tr. at 38). It appears that because the trial court had not issued a final decision concerning parenting time following Lisa's July 12, 2010 motion for modification of parenting time, Phil's counsel requested that the trial court issue a final decision concerning parenting time. (*See id.* at 38, 40).

[5] Although the trial court described its November 18, 2010 judgment entry as "agreed," a review of that filing does not indicate agreement of the parties. (*See* Doc. No. 260).

{¶57} The trial court noted that Phil voluntarily withdrew his "fourth motion" for contempt, filed on September 22, 2011,[6] and the trial court dismissed it at Phil's costs. (*Id.*). (*See also* Sept. 28, 2012 Tr. at 42-43).

{¶58} As for Phil's sixth, seventh, eighth, ninth, and tenth contempt motions and motion for attorney's fees, the trial court concluded that Phil "proved by clear and convincing evidence that [Lisa] is guilty of contempt of court in each motion to show cause for failure to comply with the prior orders of the court regarding parenting time" and that Lisa "failed to prove a valid defense to each of the motions to show cause to provide court-ordered parenting time." (Doc. No. 305). The trial court said, "[i]t is equitable to award [Phil] attorney fees given [Lisa]'s continuing course of conduct toward [Phil]"; however, "[b]ased on the incomes of the parties" and "the conduct of each of the parties," the trial court awarded Phil only "$3,000 [in attorney's fees] for the sixth and tenth motions for contempt, and the payment of court costs for the sixth and tenth motions for contempt." (*Id.*). The trial court did not sentence Lisa to jail because it said "none was requested by [Phil]." (*Id.*).

{¶59} The trial court noted that GAL Stone and Phil "reached an agreement on the issue of payment of a $1,000 deposit after [GAL Stone] proceeded on his

---

[6] The record reflects that there were no filings on September 22, 2011. It appears that the trial court was referring to Phil's September 22, *2010* "motion for contempt (fourth motion)." (Doc. No. 245). Phil did not file a "fifth" motion for contempt, instead proceeding to his "sixth" motion on August 29, 2011, because his September 22, 2010 "motion for contempt (fourth motion)" was actually his fifth motion, which he apparently realized by the time he filed his sixth motion on August 29, 2011. (*See* Doc. Nos. 227, 245, 272).

motion in contempt against Phil." (*Id.*). The trial court ordered that Phil pay GAL Stone's fee "at the rate of $50.00 monthly, commencing October 15, 2012, and on the fifteenth day of each month thereafter until the deposit ordered of $1,000.00 is paid in full," at which point GAL Stone "shall voluntarily dismiss the motion for contempt filed August 13, 2012." (*Id.*).

{¶60} The trial court "dismissed" at Phil's costs his March 21, 2012 "objection to appointment of second [GAL] and assessment of [GAL] fee deposit," noting that prior to the September 28, 2012 hearing, the trial court "notified the parties that the objections to a judge's order to appoint a second [GAL] and assess a [GAL] fee deposit had no basis in fact or law (See Judgment Entry of October 6, 2010)." (*Id.*).

{¶61} The trial court granted Lisa's motion for an in-camera interview and stated that it had "conducted the interview on the record with [GAL Stone] present" prior to the September 28, 2012 hearing. (*Id.*).

{¶62} Finally, the trial court ordered "that [Phil]'s motion to modify parenting time on July 12, 2010, is dismissed at [Phil]'s costs." (*Id.*).

{¶63} Phil filed his notice of appeal on February 8, 2013. (Doc. No. 306). He raises eight assignments of error for our review.[7] We first review together the

---

[7] Lisa has failed to file an appellee's brief in this case. Under those circumstances, App.R. 18(C) provides that we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." *Heilman v. Heilman*, 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 16.

first four assignments of error addressing parenting time. We then review together

the final four assignments of error addressing fees and costs.

### Assignment of Error No. I

**The trial court erred to the prejudice of defendant-appellant when the trial court, subsequent to a motion for finding of contempt for failure to comply with a parenting-time order, granted plaintiff-appellee's motion to modify and/or decreased [sic] parenting-time [sic].**

### Assignment of Error No. II

**The trial court erred to the prejudice of defendant-appellant by not re-establishing the original parenting-time schedule in a timely manner, that is, not specifying a full, regular visitation schedule within a temporary or final order concurrent with or soon-after [sic] the finding of contempt.**

### Assignment of Error No. III

**The trial court erred to the prejudice of defendant-appellant by abandoning the original parenting-time schedule (the schedule in effect at the time of the motion to show contempt filed June 29, 2009) from the final order (filed January 10, 2013).**

### Assignment of Error No. IV

**The trial court erred to the prejudice of defendant-appellant by not enforcing the provisions in court orders pertaining to parenting-time [sic].**

{¶64} Phil's first four assignments of error address the trial court's

decisions concerning parenting time. In his first assignment of error, Phil argues

that the trial court erred by appointing a GAL and proceeding with the

adjudication of Lisa's motion to modify parenting time while his contempt

motions were pending. In his second assignment of error, he argues that the trial court erred by not reestablishing the parenting-time schedule set forth in the magistrate's March 2, 2007 order after the trial court found Lisa in contempt. In Phil's third assignment of error, he argues that the trial court erred by abandoning the March 2, 2007 order and establishing a different parenting-time schedule in its January 10, 2013 judgment entry. In his fourth assignment of error, he argues that the trial court erred by delaying the adjudication of his contempt motions and by not enforcing the parenting-time schedule.

{¶65} We first address Phil's arguments that the trial court erred by appointing a GAL. Civ.R. 75(B)(2) provides for the appointment of a GAL in a post-divorce proceeding: "[w]hen it is essential to protect the interests of a child, the court may join the child of the parties as a party defendant and appoint a guardian ad litem and legal counsel, if necessary, for the child and tax the costs * * *." "A trial court is granted broad discretion under Civ.R. 75(B)(2) with respect to appointment of guardians ad litem and orders for payment of their fees." *Gabriel v. Gabriel*, 6th Dist. Lucas No. L-08-1303, 2009-Ohio-1814, ¶ 15 (citations omitted). Therefore, we review the trial court's decision to appoint a GAL for abuse of discretion. *See id.*

{¶66} Here, the trial court filed its entry appointing GAL Cockley on July 31, 2009—a month after Phil filed his first contempt motion on June 29, 2009, and

a month before Lisa filed her initial motion for modification of parenting time on September 4, 2009. (Doc. Nos. 172, 175, 183). In its entry, the trial court made the necessary finding—that appointing a GAL was "essential to protect the interests of [Lisa and Phil's] minor children"—and appointed GAL Cockley. (Doc. No. 172). The trial court observed that "the parties are not in agreement regarding allocation of parental rights or parenting time of their minor children" and noted that "the parties and counsel agreed to the appointment of this [GAL]." (*Id.*). Phil apparently shifted course three weeks after the trial court appointed GAL Cockley. He filed a "motion to revise [GAL]'s involvement," arguing that "the problem seems to be more with enforcement of Court Orders rather [than] a lack of Court Orders." (Doc. No. 175).

{¶67} We conclude that the trial court did not abuse its discretion by appointing a GAL under Civ.R. 75(B)(2). Although there was no motion for modification of parenting time pending when the trial court appointed GAL Cockley, the trial court apparently learned in a telephone status conference that the parties disagreed over how parenting time should be allocated. (Doc. No. 172). Indeed, Lisa filed a motion for modification of parenting time on September 4, 2009—shortly over a month after the trial court appointed GAL Cockley.[8] Most importantly, the trial court found that appointing a GAL was "essential to protect

---

[8] On July 12, 2010, Lisa withdrew her September 4, 2009 motion and filed a new motion for modification of parenting time. (Doc. Nos. 231, 232).

the interests of their minor children," satisfying Civ.R. 75(B)(2)'s prerequisite. *See* Civ.R. 75(B)(2).

**{¶68}** That Phil and his attorney were not on the same page when Phil's counsel apparently agreed to the appointment of a GAL during a July 9, 2009 telephone status conference is of no consequence. First and foremost, it is within the trial court's discretion to appoint a GAL when the trial court finds that doing so is essential to protect a minor child's interest. *See Gabriel*, 2009-Ohio-1814, at ¶ 15. Second, "a client is bound by the acts of his attorney." *Thirion v. Neumann*, 11th Dist. Ashtabula No. 2004-A-0032, 2005-Ohio-4486, ¶ 17, citing *Link v. Wabash RR. Co.*, 370 U.S. 626, 633-634, 82 S.Ct. 1386 (1962). *See also Advantage Bank v. Waldo Pub, L.L.C.*, 3d Dist. Marion No. 9-08-67, 2009-Ohio-2816, ¶ 52 (agreeing with the trial court's statement that "a client is bound by the acts of his attorney, whether authorized or not").

**{¶69}** For these reasons, we conclude that the trial court did not abuse its discretion when it appointed a GAL.

**{¶70}** We next turn to Phil's arguments challenging the trial court's modified parenting-time schedule, found in a November 18, 2010 entry that the trial court adopted in its January 10, 2013 judgment entry as its final order concerning parenting time. (*See* Doc. No. 305). "R.C. 3109.051 governs modification of a parenting time schedule." *Williamson v. Cooke*, 10th Dist.

Franklin No. 09AP-222, 2009-Ohio-6842, ¶ 17, citing *Braatz v. Braatz*, 85 Ohio St.3d 40 (1999), paragraph one of the syllabus. "When revising a parenting time schedule, a trial court must establish a schedule that is in the best interest of the child, and in doing so, it must consider the factors set forth in R.C. 3109.051[D]." *Id.*, citing *Braatz* at paragraph two of the syllabus. "The party seeking the modification of the parenting time schedule bears the burden of proving that the requested change is in the child's best interest." *Id.* (citations omitted).

{¶71} "A trial court's establishment of a non-residential parent's visitation rights is within its sound discretion and will not be disturbed on appeal absent a showing of an abuse of discretion." *Walton v. Walton*, 3d Dist. Union No. 14-10-21, 2011-Ohio-2847, ¶ 19, citing *Fordham v. Fordham*, 3d Dist. Logan No. 8-08-17, 2009-Ohio-1915, ¶ 18. *See also Appleby v. Appleby*, 24 Ohio St.3d 39, 41 (1986). "An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable." *Walton* at ¶ 19, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The trial court's discretion concerning visitation is broader than its discretion concerning child custody matters. *Id.*, citing *Elson v. Elson*, 3d Dist. Shelby No. 17-04-16, 2005-Ohio-3228, ¶ 11. Ultimately, "the trial court must exercise its discretion in the best interest of the child." *Id.*, citing *Bodine v. Bodine*, 38 Ohio App.3d 173, 175 (10th Dist.1988).

{¶72} "Additionally, we note that the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Id.* at ¶ 20, citing *Clark v. Clark*, 3d Dist. Union No. 14-06-56, 2007-Ohio-5771, ¶ 23. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Id.*, quoting *Clark* at ¶ 23 (internal quotation marks omitted). "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Id.*, quoting *Clark* at ¶ 23 (internal quotation marks omitted).

{¶73} Here, per the trial court's January 10, 2013 judgment entry, the November 18, 2010 entry contains its final order concerning parenting time. (Doc. No. 305). The trial court issued its November 18, 2010 entry after a three-day hearing held on July 12, September 22, and September 29, 2010. (Doc. No. 260). In issuing its parenting-time schedule, the trial court listed and said it considered the sixteen factors found in R.C. 3109.051(D). (*Id.*). The trial court said it "considered all evidence and the exhibits, considered the [GAL]'s report and recommendation, the court's conducting [sic] *in camera* interview with the parties' minor child, Sarah, and the case history." (Emphasis sic). (*Id.*). Specifically, the trial court considered "the failure of prior orders to achieve reunification failing to accomplish that end due to the actions of the parties, some

[sic] more than another, the failure of year-long counseling agreed to by the parties and ordered to attempt reunification again, and Sarah's wishes and concerns * * *." (*Id.*).

**{¶74}** In its January 10, 2013 entry, the trial court said it "reviewed the record including the pleadings filed, listened to the evidence, read the exhibits, considered all the evidence, the closing arguments, and all statutory and case law requirements." (Doc. No. 305). The trial court also summarized the testimony GAL Stone offered at the September 28, 2012 hearing:

His testimony was as follows: both parents have placed Sarah in the middle of their personal parental disputes. Sarah felt pressured by both and she is aware of court proceedings. The [GAL] believed that Lisa never encouraged Sarah to see or otherwise interact with Phil. Phil's actions do not jeopardize Sarah's health, safety or welfare. However, for many years, Lisa has "demonized" (per [GAL]) Phil as a person/parent and Sarah believed her mother's characterizations of Phil. Phil lacked insight into decisions that, while not harmful to his daughter, impacted her feelings for and relationship with him. His pursuit of enforcing his court-ordered parenting continued for years knowing that Sarah did not want to see him created her oppositional attitude given her becoming a teenager

with normal numerous activities impacting Phil's parenting time order.

(*Id.*).  The trial court explained that "[a]fter the [GAL] testified as above, the parties agreed that it was in the minor child's best interest that the interim order would be the final order of court."  (*Id.*).

**{¶75}** Phil argues that he never agreed that it was in Sarah's best interest that the trial court adopt its November 18, 2010 entry as the final parenting-time schedule.  The transcript of the September 28, 2012 hearing before this Court appears to omit portions of the hearing, including GAL Stone's testimony.  While an appellant is allowed under App.R. 9(B)(1) to include in the record only those "proceedings the appellant considers necessary," an appellate court presumes regularity when an appellant omits a portion of the record necessary for its review.  *Black v. St. Marys Police Dept.*, 3d Dist. Mercer No. 10-11-11, 2011-Ohio-6697, ¶ 11-12 ("'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.'"), quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).  Because Phil has omitted from the record a portion of the proceedings necessary for our review, we presume

that he agreed, as the trial court said he did, that it was in Sarah's best interest that the November 18, 2010 entry be the final order concerning parenting time.

**{¶76}** Even assuming Phil did not agree, he has not suggested why the November 18, 2010 entry should not have been the trial court's final order concerning parenting time. While the trial court did make some findings of fact, it said in its November 18, 2010 entry that it was "imperative to issue this order without findings of many facts which would further delay implementing what the court determines is in the minor child's best interests." (Doc. No. 260). It similarly said in its January 10, 2013 entry that it did "not make findings of facts on all the evidence that may be important to the parties." (Doc. No. 305). Phil did not request that the trial court issue complete findings of fact and conclusions of law under Civ.R. 52 and, therefore, waived his "right to challenge the trial court's lack of an explicit finding concerning an issue." *Yannitell v. Oaks*, 4th Dist. Washington No. 07CA63, 2008-Ohio-6271, ¶ 32-33 (citations omitted). Nor does Phil suggest that the trial court failed to consider the factors it was required to consider under R.C. 3109.051(D).

**{¶77}** The record reflects that the trial court considered the R.C. 3109.051(D) factors. The trial court listed the factors in its November 18, 2010 entry, and it said it considered them. (Doc. No. 260). Between the November 18, 2010 and January 10, 2013 entries, it is clear that the trial court considered, among

other things:  Sarah's relationship with her parents; Lisa's, Phil's, and Sarah's schedules; Sarah's age, wishes, concerns, health, safety, and welfare; the inability of the parties to cooperate in the administration of parenting time; Lisa's repeated denial of Phil's court-ordered parenting time; and, the reports, recommendations, and testimony of GAL Cockley and GAL Stone.  (*See* Doc. Nos. 260, 305).  *See* R.C. 3109.051(D)(1), (3), (4), (6), (7), (10), (13), (16).  The trial court satisfied its obligation to consider the R.C. 3109.051(D) factors.  *See Ross v. Ross*, 9th Dist. Summit No. 26106, 2012-Ohio-2175, ¶ 8 (concluding that "explicit reference to R.C. 3109.051's factors [is] unnecessary if 'it is clear from the record the court considered the factors'"), quoting *Bonner v. Deselm-Bonner*, 5th Dist. Guernsey No. 10CA000033, 2011-Ohio-2348, ¶ 39.

{¶78} Phil takes issue with the trial court's attempt to achieve "reunification" of Phil and his minor children.  Although Phil cites no statute or case law in support of his argument that the trial court should not have pursued a goal of "reunification," he does say that he never disputed the trial court's March 2, 2007 parenting-time schedule—just Lisa's failure to honor it.  Phil overlooks, however, that Lisa filed motions for modification of parenting time, and before she did, the trial court concluded that the parties were "not in agreement regarding allocation of parental rights or parenting time * * *."  (*See* Doc. Nos. 172, 183, 231).  Under those circumstances, it is not beyond a trial court's discretion to issue

temporary orders in an attempt to achieve reunification before issuing a final parenting-time schedule, especially in a case such as this one involving strained parent-child relationships. *See, e.g.*, *Moline v. Moline*, 11th Dist. Ashtabula No. 2009-A-0013, 2010-Ohio-1799, ¶ 81 (affirming the trial court's judgment granting the father's motion for modification of parenting time and ordering the minor child to undergo reunification with her father). The trial court did not abuse its discretion by attempting to achieve reunification in a series of temporary parenting-time orders before issuing a final parenting-time schedule.

{¶79} For these reasons, we cannot conclude that the trial court abused its discretion in making its November 18, 2010 entry its final order concerning parenting time. The trial court was presented with a complicated case, exacerbated by the parties' relentless litigiousness. This case is a classic example of the trial court being "in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Walton*, 2011-Ohio-2847, at ¶ 20, citing *Clark*, 2007-Ohio-5771, at ¶ 23. As a reviewing court, we cannot reverse a decision simply because we hold an opinion different than the trial court. *Id.*, citing *Clark* at ¶ 23. The trial court did not abuse its discretion in granting Lisa's motion for modification of parenting time and setting the final parenting-time schedule.

{¶80} We next address Phil's arguments that the trial court should have adjudicated his contempt motions before adjudicating Lisa's motions for modification of parenting time and that the trial court erred by delaying its adjudication of his contempt motions. "It is well-established that the control of the docket and consideration of motions by the trial court rests within the sound discretion of the court." *Catudal v. Catudal*, 10th Dist. Franklin Nos. 12AP-951, 12AP-991, 13AP-79, and 13AP-94, 2013-Ohio-2748, ¶ 26, citing *Stewart v. Cleveland Clinic Found.*, 136 Ohio App.3d 244, 254 (8th Dist.1999). Considering Phil's contempt motions and Lisa's motion for modification of parenting time concurrently was not an abuse of discretion. *See id. See also Anderson v. Anderson*, 12th Dist. Warren No. CA2009-03-033, 2009-Ohio-5636, ¶ 1, 4, 5 (affirming the trial court's judgment, which disposed of, among other motions, a contempt motion and a motion for modification of parenting time, filed in that order). Nor was the trial court's delay in resolving Phil's contempt motions an abuse of discretion. *See Catudal* at ¶ 26. Phil cites no authority in support of his arguments.

{¶81} For the reasons above, Phil's first, second, third, and fourth assignments of error are overruled.

### Assignment of Error No. V

**The trial court erred to to [sic] the prejudice of defendant-appellant by failing to award fees & [sic] expenses generated by**

**the attorney retained by defendant-appellant and as directed by ORC 3105.73(B) and ORC 3409.051(K).**

### Assignment of Error No. VI

**The trial court erred to to [sic] the prejudice of defendant-appellant by failing to award all guardian ad litem fees and expenses to defendant-appellant and as directed by ORC 3105.73(B) and ORC 3409.051(K).**

### Assignment of Error No. VII

**The trial court erred to to [sic] the prejudice of defendant-appellant by failing to award all court costs to defendant-appellant and as directed by 3105.73(B) and by ORC 3409.051(K).**

### Assignment of Error No. VIII

**The trial court erred to to [sic] the prejudice of defendant-appellant by failing to award to defendant-appellant all attorney fees and court costs incurred by defendant-appellant pertaining to plaintiff-appellee's bankruptcy proceeding as directed by ORC 3105.73(B) and ORC 3409.051(K).**

**{¶82}** In Phil's fifth, sixth, seventh, and eighth assignments of error, he argues that R.C. 3105.73(B) and 3409.051(K) required the trial court to award him all of his contempt-related attorney's fees, court costs, and GAL fees, as well as attorney's fees and court costs that he incurred in Lisa's bankruptcy proceeding preserving an award of attorney's fees issued by the trial court.

**{¶83}** Relevant to these assignments of error are the following motions. Beginning on June 29, 2009, Phil filed a total of ten contempt motions against Lisa. (Doc. Nos. 166, 178, 202, 227, 245, 272, 278, 287, 292, 298). Phil

withdrew his fifth contempt motion (Doc. No. 245), which he filed on September 22, 2010. (Sept. 28, 2012 Tr. at 42-43). (*See also* Doc. No. 305). Phil also filed a "request/motion for court to rule on assessment of attorney fees; court costs; and GAL fees pertaining to the contempt finding against plaintiff" and a "motion for attorney fees." (Doc. Nos. 219, 271).

{¶84} As a threshold matter, we lack jurisdiction to consider Phil's arguments concerning the trial court's judgments on his first four contempt motions (Doc. Nos. 166, 178, 202, 227) because he has not timely appealed the trial court's orders concerning those motions.

{¶85} On December 3, 2009, pursuant to the agreement of the parties, the trial court filed a judgment entry finding Lisa in contempt as alleged in Phil's first two motions for contempt (Doc. Nos. 166, 178). (Doc. No. 198). The trial court imposed a 10-day jail sentence on Lisa and suspended that sentence on condition that Lisa purge her contempt by, among other things, attending counseling and abiding by the December 3, 2009 temporary order agreed to by the parties. (*Id.*). After initially reserving a decision on Phil's requested additional relief—which included make-up parenting time, court costs, GAL fees, and attorney's fees—the trial court ruled on these requests in a July 26, 2010 journal entry. (*Id.*).

{¶86} On January 13, 2010, the trial court found that Lisa "failed to comply with one of the conditions of the purge order" and ordered Lisa jailed for one day,

with the remaining nine days of the original 10-day jail sentence suspended with Lisa "to continue to be required to comply with all conditions of the purge order." (Doc. No. 212). On July 26, 2010, the trial court filed the entry ordering Lisa to pay 12 monthly installments totaling $2,500 toward Phil's attorney's fees, court costs related to Phil's June 29, 2009 contempt motion and May 13, 2010 "request/motion for court to rule on assessment of attorney fees; court costs; and GAL fees pertaining to the contempt finding against plaintiff," and GAL fees "as of the date of trial" of $1,117.50. (Doc. No. 237). The trial court described its July 26, 2010 "journal entry" as "a final order." (*Id.*).

{¶87} On January 27, 2011, the trial court filed a judgment entry finding Lisa in contempt because she failed to provide Phil with her email address and a schedule of their children's activities and because she scheduled orthodontia appointments other than those authorized by the trial court, as alleged in Phil's third and fourth motions for contempt (Doc. Nos. 202, 227), respectively. (Doc. No. 268). The trial court awarded Phil $500 in attorney's fees and ordered Lisa to "pay the costs of these proceedings within sixty days," but it did not sentence Lisa to jail because imposing a jail sentence with a purge provision would be "fruitless" under the circumstances. (*Id.*).

{¶88} Under Ohio law, contempt of court consists of two elements. *Frey v. Frey*, 197 Ohio App.3d 273, 2011-Ohio-6012, ¶ 17 (3d Dist.), citing *Cooper v.*

*Cooper*, 14 Ohio App.3d 327, 328-329 (8th Dist.1984). "The first is a finding of contempt of court and the second is the imposition of a penalty or sanction, such as a jail sentence or fine." *Id.*, quoting *Cooper* at 328-329 (internal quotation marks omitted). The imposition of a sanction, albeit suspended to afford the contemnor an opportunity to purge himself of the contempt, satisfies the second element of contempt. *Id.*, citing *Abernethy v. Abernethy*, 8th Dist. Cuyahoga No. 92708, 2010-Ohio-435, ¶ 37 ("The addition of the sentence, albeit, suspended, supplies the second element rendering the order final.") (additional citations omitted). *See also Farrell v. Farrell*, 5th Dist. Licking No. 2008-CA-0080, 2009-Ohio-1341, ¶ 16, citing *Peterson v. Peterson*, 5th Dist. Muskingum No. 2003-0049, 2004-Ohio-4714, ¶ 8 ("We find said imposition of the sentence for contempt (as opposed to the execution of sentence), albeit with purge conditions, constituted a final appealable order, from which appellant did not timely appeal.").

{¶89} "Until both a finding of contempt is made and a penalty [is] imposed by the court, there is not a final order." *Frey* at ¶ 17, quoting *Cooper* at 328-329 (internal quotation marks omitted). However, once a trial court finds a party in contempt and imposes a sanction, its order becomes final and appealable, and a party waives his right to challenge the order if he does not timely appeal it. *McCree v. McCree*, 7th Dist. Mahoning No. 01 CA 228, 2003-Ohio-1600, ¶ 21.

*See also* R.C. 2705.09 ("The judgment and orders of a court or officer made in cases of contempt may be reviewed on appeal.").

**{¶90}** Here, the trial court's July 26, 2010 entry concerning Phil's first and second contempt motions was a final, appealable order because it imposed additional sanctions on which the trial court had reserved judgment. (*See* Doc. Nos. 198, 237). The trial court had already found Lisa in contempt as to Phil's first and second contempt motions and already imposed a suspended jail sentence. (Doc. No. 198). In fact, Phil appealed the July 26, 2010 entry to this Court but later dismissed the appeal. (Doc. Nos. 239, 274). Similarly, the trial court's January 27, 2011 judgment entry was a final, appealable order because the trial court found Lisa in contempt as to Phil's third and fourth contempt motions and imposed sanctions. (*See* Doc. No. 268). Because Phil has not timely appealed the July 26, 2010 and January 27, 2011 entries, he cannot now assign errors related to the trial court's disposition of his first, second, third, and fourth contempt motions. *See McCree* at ¶ 21.

**{¶91}** We turn next to Phil's arguments concerning the trial court's disposition of his sixth, seventh, eighth, ninth, and tenth contempt motions (Doc. Nos. 272, 278, 287, 292, 298), which the trial court decided in its January 10, 2013 judgment entry on appeal before this Court.

{¶92} "An award of attorney's fees in a domestic relations action is committed to the sound discretion of the trial court." *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972, ¶ 21, citing *Stuart v. Stuart*, 144 Ohio St. 289 (1944) (additional citation omitted). "This court will not reverse an award of attorney fees absent a finding that the trial court abused its discretion." *Id.*, citing *Stuart*. An abuse of discretion "implies the trial court's attitude is unreasonable, arbitrary or unconscionable." *Id.* at ¶ 11, citing *Blakemore*, 5 Ohio St.3d at 219.

{¶93} Phil argues that he was entitled to attorney's fees, court costs, and GAL fees under two statutes. One is R.C. 3105.73(B), which allows a trial court to award attorney's fees and litigation expenses in post-divorce proceedings:

In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

*See also Adams v. Adams*, 3d Dist. Union No. 14-13-01, 2013-Ohio-2947, ¶ 23; *Erwin v. Erwin*, 3d Dist. Marion No. 9-08-15, 2009-Ohio-407, ¶ 38. "R.C. 3105.73(B) gives a trial court broad discretion to award attorney's fees * * *." *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 16.

{¶94} The other statute is R.C. 3109.051(K). Unlike R.C. 3105.73(B), R.C. 3109.051(K) requires that a trial court award contempt-related courts costs and reasonable attorney's fees if it finds a party in contempt:

> If any person is found in contempt of court for failing to comply with or interfering with any order or decree granting parenting time rights issued pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights issued pursuant to this section, section 3109.11 or 3109.12 of the Revised Code, or any other provision of the Revised Code, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt, and may award reasonable compensatory parenting time or visitation to the person whose right of parenting time or visitation was affected by the failure or

interference if such compensatory parenting time or visitation is in the best interest of the child. Any compensatory parenting time or visitation awarded under this division shall be included in an order issued by the court and, to the extent possible, shall be governed by the same terms and conditions as was the parenting time or visitation that was affected by the failure or interference.

*See also Hall v. Nazario*, 9th Dist. Lorain No. 07CA009131, 2007-Ohio-6401, ¶ 15-16. In other words, if the trial court finds a party in contempt, "[t]he award is mandatory, and the statute does not require any inquiry into the paying party's ability to pay or the opposing party's ability to litigate his rights and protect his interests." *Robinson v. Robinson*, 8th Dist. Cuyahoga No. 85980, 2005-Ohio-6240, ¶ 14, citing *Mann v. Mendez*, 9th Dist. Lorain No. 04CA008562, 2005-Ohio-3114, ¶ 21.

{¶95} As for our review of an amount of attorney's fees awarded by a trial court, "[w]e review the trial court's valuation of the attorney fees for an abuse of discretion." *Hall* at ¶ 17, citing *Mann* at ¶ 22 and *Robinson* at ¶ 16. "'Thus, a court's attorney fees award will not be reversed unless it is deemed arbitrary, unreasonable, or unconscionable.'" *Id.*, quoting *Mann* at ¶ 22. "'What is *reasonable*,' for purposes of calculating attorney fees, 'is a question of fact[, and t]he trial court must have evidence before it probative of that issue in order to

make the finding.'" (Emphasis sic.) *Kimball v. Austin*, 9th Dist. Lorain No. 01CA007760, 2001 WL 866260, \*2 (Aug. 1, 2001), quoting *Madden v. Madden*, 2d Dist. Montgomery No. 15576, 1996 WL 339941, \*4 (June 14, 1996).

{¶96} However, "'where the amount of the attorney's time and work is evident to the trier of fact, an award of attorney fees, even in the absence of specific evidence to support the amount, is not an abuse of discretion.'" *Woloch v. Foster*, 98 Ohio App.3d 806, 813 (2d Dist.1994), quoting *Kreger v. Kreger*, 9th Dist. Lorain No. 91CA005073, 1991 WL 262883 \*2 (Dec. 11, 1991). *See also Long v. Long*, 10th Dist. Franklin No. 11AP-510, 2012-Ohio-6254, ¶ 20 ("The trial court * * * is not required to hear [expert] testimony and may rely on its own knowledge and experience to determine the reasonableness of the amount claimed."); *Beadle v. Beadle*, 4th Dist. Scioto No. 03CA2911, 2004-Ohio-1400, ¶ 5, 19 (citing *Woloch* and affirming the trial court's "nominal" attorney's fee award of $500 under R.C. 3109.051(K) following the trial court's contempt finding, notwithstanding that the movant for contempt did not present evidence of his attorney's fees). In addition, parties may stipulate to the accuracy and reasonableness of attorney's fees. *Hall* at ¶ 17, citing *Iwanek v. Iwanek*, 9th Dist. Lorain No. 90CA004884, 1991 WL 19307, \*3 (Feb. 13, 1991).

{¶97} Finally, concerning GAL fees, "[t]he trial court has discretion over the amount of GAL fees, as well as the allocation to either or both of the parties."

*Flowers*, 2011-Ohio-5972, at ¶ 28, citing *Karales v. Karales*, 10th Dist. Franklin No. 05AP-856, 2006-Ohio-2963, ¶ 21. *See also Holeski v. Holeski*, 11th Dist. Portage No. 2009-P-0007, 2009-Ohio-6036, ¶ 28 ("A trial court has broad authority to tax [GAL] fees as costs, including the amount of the fees and the allocation to either or both of the parties." (citations and internal quotation marks omitted)). Therefore, we review "a ruling of the trial court relative to an award of [GAL] fees under an abuse of discretion standard." *Holeski* at ¶ 28 (citation and internal quotation marks omitted). "'Fees may be allocated based on the parties' litigation success and the parties' economic status.'" *Id.*, quoting *Padgett v. Padgett*, 10th Dist. Franklin No. 08AP-269, 2008-Ohio-6815, ¶ 36. "Moreover, it is proper to allocate GAL fees based upon which party caused the work of the GAL." *Flowers* at ¶ 28, citing *Karales* at ¶ 21.

{¶98} We will first address Phil's fifth and seventh assignments of error, in which he argues that the trial court should have awarded him his attorney's fees and court costs, as he requested in his contempt motions.

{¶99} The trial court found Lisa in contempt as to each of Phil's sixth, seventh, eighth, ninth, and tenth contempt motions because she "fail[ed] to comply with the prior orders of the court regarding parenting time." (Doc. No. 305). After finding Lisa in contempt, the trial court applied R.C. 2705.02 and 3105.73 and awarded Phil court costs and $3,000 in attorney's fees for his sixth and tenth

motions only, explaining that the trial court based its decision on equitable considerations and the incomes and conduct of the parties:

It is equitable to award [Phil] attorney fees given [Lisa]'s continuing course of conduct toward [Phil]. [Phil] is entitled to an award of reasonable attorney fees in pursuing motions to show cause against [Lisa]. However, the motions were filed beginning August of 2011 to July of 2012, and could have been consolidated into fewer motions (the Court cannot determine the reasoning behind repetitive motions to show cause except to punish [Lisa] for her contemptuous acts). Therefore, the court considered that the amount requested for attorney fees is not reasonable although understandable given [Lisa]'s conduct and attitude toward court orders.

Based on the incomes of the parties, the conduct of each of the parties, [Phil] is entitled to a reasonable fee of $3,000.00 for the sixth and tenth motions for contempt, and the payment of court costs for the sixth and tenth motions for contempt.

(Doc. No. 305).

{¶100} The trial court erred as a matter of law and therefore abused its discretion when it found Lisa in contempt on Phil's seventh, eighth, and ninth motions but declined to award Phil court costs and reasonable attorney's fees for

those motions. The trial court granted Phil parenting-time rights under R.C. 3109.051(K), and it found Lisa in contempt on each of Phil's sixth through tenth contempt motions for failing to honor those parenting-time rights. (*See* Doc. Nos. 260, 305). R.C. 3109.051(K) required the trial court to award Phil court costs and reasonable attorney's fees arising out of the contempt as alleged in each motion when it concluded Lisa was in contempt as alleged in the motions. *See Kimball*, 2001 WL 866260, at \*2 ("Having found [appellee-mother] in contempt of a visitation order, the trial court was required by R.C. 3109.051(K) to order her to pay the court costs involved in the contempt proceedings and to pay any reasonable attorney fees [appellant-father] incurred in association with the contempt."), citing R.C. 3109.051(K).

{¶101} Furthermore, the trial court improperly relied on "equitable" considerations, including the parties' conduct and incomes, which are considerations found in R.C. 3105.73. (Doc. No. 305). *See Robinson*, 2005-Ohio-6240, at ¶ 14, citing *Mann*, 2005-Ohio-3114, at ¶ 21. Because R.C. 3109.051(K) specifically addresses when to award court costs and reasonable attorney's fees in contempt proceedings involving a parenting-time order and requires the imposition of court costs and reasonable attorney's fees if the trial court finds a party in contempt, it controls over R.C. 3105.73, the more general provision. *See Beadle*, 2004-Ohio-1400, at ¶ 20 (applying R.C. 3109.051(K) rather than "the

more general provisions of R.C. 3105.18(H)," which afforded the trial court discretion to award attorney's fees in divorce or legal separation proceedings), citing *McAuliffe v. W. States Import Co., Inc.*, 72 Ohio St.3d 534, 540 (1995), fn. 5 and R.C. 1.51.[9]   As we explained above, R.C. 3105.73 affords the trial court discretion in deciding whether to award costs and fees in post-divorce proceedings.  It does not mention contempt.  *See* R.C. 3105.73.

{¶102} For these reasons, we sustain Phil's fifth and seventh assignments of error insofar as the trial court failed to award court costs and reasonable attorney's fees under R.C. 3109.051(K) after finding Lisa in contempt on Phil's seventh, eighth, and ninth motions.

{¶103} We next address Phil's argument in his fifth assignment of error that the trial court should have awarded him attorney's fees exceeding $1,500 per motion for his sixth and tenth contempt motions.  The record reflects that Phil requested attorney's fees of $1,500 for each of his sixth through tenth contempt motions.  (*See* Doc. No. 305).  (*See also* Sept. 28, 2012 Tr. at 44-45).  However,

---

[9] Though it may appear to be so, our conclusion that, notwithstanding R.C. 3105.73(B), R.C. 3109.051(K) requires a trial court to impose court costs and reasonable attorney's fees once it finds a party in contempt is not inconsistent with our decision in *Erwin*.  In *Erwin*, the trial court found the appellant-mother in contempt for violating the appellee-paternal grandmother's visitation rights and awarded attorney's fees under R.C. 3105.73(B).  2009-Ohio-407, at ¶ 10.  On appeal, the appellant-mother argued that the trial court's decision to award attorney's fees under R.C. 3105.73 was contrary to law and that attorney's fees could only have been awarded under R.C. 3109.051(K).  *Id.* at ¶ 37.  The basis for the appellant-mother's argument was apparently that an award of only contempt-related fees authorized R.C. 3109.051(K) would have been less than the more encompassing fee award authorized by R.C. 3105.73(B).  In affirming the trial court's decision to award fees under R.C. 3105.73(B), we noted that we found no authority mandating that attorney's fees in domestic contempt proceeding be awarded under R.C. 3109.051(K), as opposed to R.C. 3105.73(B).  *Id.* at ¶ 42.  This case is different than *Erwin* because here, the trial court neglected to award any court costs and attorney's fees for three of the motions on which it found Lisa in contempt.

Phil appears to argue in his brief that he clarified at the September 28, 2012 hearing that the $1,500 amount per contempt did not cover the parenting-time aspects of those contempt motions. Even assuming he "clarified" at the hearing that he was requesting more than $1,500 per contempt, which is unclear, Phil has not suggested how the trial court abused its discretion when it awarded $1,500 in attorney's fees per motion for Phil's sixth and tenth contempt motions. We overrule Phil's fifth assignment of error to the extent Phil argues in it that the trial court should have awarded additional attorney's fees for his sixth and tenth contempt motions.

{¶104} We next address Phil's sixth assignment of error, in which he argues that the trial court erred by not awarding him GAL fees and expenses under R.C. 3105.73(B) and 3109.051(K). Specifically, Phil argues that it was Lisa's contemptuous conduct that resulted in the trial court's decision to appoint a GAL. He also argues, without citing authority, that "[t]he expense of a GAL in this case is a court cost" for purposes of R.C. 3109.051(K). (Appellant's Brief at 17).

{¶105} We find no case, and Phil has not cited one, standing for the proposition that GAL fees are "court costs" under R.C. 3109.051(K); however, it appears that courts sometimes treat GAL fees as court costs in other contexts. *See, e.g., Myers v. Myers*, 170 Ohio App.3d 436, 2007-Ohio-66, ¶ 28 (5th Dist.) (quoting the trial court's local rules, which provide that GAL fees are treated as

court costs if an indigent party requests a GAL). Nevertheless, we decline to categorically place GAL fees within the meaning of "court costs" under R.C. 3109.051(K), as doing so would remove a trial court's discretion in an area that has historically been one of discretion for a trial court. Therefore, the trial court was not required under R.C. 3109.051(K) to award Phil GAL fees as "court costs" when it found Lisa in contempt.

{¶106} Instead, as it did in its decision to appoint a GAL, the trial court had discretion over the amount of GAL fees and their allocation. *Flowers*, 2011-Ohio-5972, at ¶ 28. In its July 26, 2010 entry, the trial court concluded that GAL fees "are costs of ligation as defined by R.C. 3105.73 * * *." (Doc. No. 237). We agree with the trial court to the extent it concluded that it had discretion to award GAL fees as "litigation expenses" under R.C. 3105.73(B).

{¶107} As we noted above, Phil or his counsel initially agreed to the appointment of a GAL, and the trial court did not abuse its discretion in appointing one. In awarding relief to Phil on his first two contempt motions, the trial court ordered Lisa to pay the GAL fees necessitated by her contempt. (Doc. No. 237). In an interim journal entry of the same day, the trial court ordered Phil and Lisa to split GAL fees for services rendered after July 22, 2010. (Doc. No. 236). On September 28, 2012, Phil and GAL Stone reached an agreement under which Phil would pay GAL Stone's deposit that the trial court had previously ordered Phil to

pay. (Doc. No. 305). While it does appear, as Phil points out, that the trial court mistakenly believed Phil filed the July 12, 2010 motion for modification of parenting time, Phil's argument that the trial court erred by relying on that mistaken belief when allocating GAL fees is undermined by his agreement to pay GAL Stone's deposit as reflected in the trial court's January 10, 2013 entry.[10] (*See* Doc. No. 305).

{¶108} We understand Phil's plight that Lisa's repeated contemptuous conduct exacerbated the GALs' involvement. However, this Court cannot substitute its judgment for that of the trial court, and absent an abuse of discretion, we cannot reverse the trial court's allocation of GAL fees. We cannot conclude that the trial court's decision concerning the allocation of GAL fees was unreasonable, arbitrary, or unconscionable. For these reasons, we overrule Phil's sixth assignment of error.

{¶109} In his eighth and final assignment of error, Phil argues that the trial court erred by not awarding him, under R.C. 3105.73(B) and 3109.051(K), the attorney's fees and court costs that he incurred in Lisa's bankruptcy proceeding. He argues that in that bankruptcy proceeding, he was forced to preserve the attorney's fees award that the trial court previously awarded him in this case and

---

[10] In its January 10, 2013 entry, the trial court ordered "that the defendant's motion to modify parenting time on July 12, 2010, is dismissed at defendant's costs." (Doc. No. 305). Phil does not assign as error the trial court's decision to assess him costs for that motion, even though it was Lisa who filed it. Therefore, we do not address that issue.

to defend against Lisa's meritless arguments that the award was dischargeable in bankruptcy.

{¶110} The trial court did not abuse its discretion by not awarding Phil his bankruptcy-related attorney's fees and court costs. Neither R.C. 3105.73(B) nor R.C. 3109.051(K) allows for such an award, and Phil cites no authority suggesting they do. By its plain language, R.C. 3105.73(B) governs awarding fees in post-divorce proceedings, not bankruptcy. Similarly, it is too far a leap to say that, under R.C. 3109.051(K), Phil's bankruptcy-related court costs "ar[ose] out of the contempt proceeding" and his bankruptcy-related attorney's fees "arose in relation to the act of contempt." For these reasons, we overrule Phil's eighth assignment of error.

{¶111} In summary, we overrule Phil's first, second, third, and fourth assignments of error, all of which concern parenting time. We overrule Phil's sixth assignment of error concerning the trial court's allocation of GAL fees. We overrule Phil's eighth assignment of error concerning court costs and attorney's fees that Phil incurred in Lisa's bankruptcy proceeding. We overrule in part and sustain in part Phil's fifth assignment of error: we overrule his fifth assignment of error to the extent he argues in it the trial court should have awarded additional attorney's fees for his sixth and tenth contempt motions; we sustain his fifth assignment of error insofar as the trial court failed to award under R.C.

3109.051(K) reasonable attorney's fees for his seventh, eighth, and ninth motions for contempt after finding Lisa in contempt on those motions. We sustain Phil's seventh assignment of error insofar as the trial court failed to award court costs under R.C. 3109.051(K) after finding Lisa in contempt on Phil's seventh, eighth, and ninth motions for contempt. On remand, the trial court must award court costs and reasonable attorney's fees on Phil's seventh, eighth, and ninth motions for contempt.

{¶112} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued as to the first, second, third, fourth, sixth, and eighth assignments of error and part of the fifth assignment of error, we affirm the judgment of the trial court. However, we sustain the seventh assignment of error and part of the fifth assignment of error as stated above and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WILLAMOWSKI and ROGERS, J.J., concur.**
**/jlr**